[S. F. No. 20422. In Bank. Aug. 2, 1960.]

MARION R. SYREK, JR., Appellant, v. CALIFORNIA UNEMPLOYMENT INSURANCE APPEALS BOARD et al., Respondents.

Albert M. Bendich for Appellant.

Stanley Mosk, Attorney General, Irving H. Perluss and B. Abbott Goldberg, Assistant Attorneys General, William L. Shaw and Herschel T. Elkins, Deputy Attorneys General, for Respondents.

J. Richard Glade as Amicus Curiae on behalf of Respondents.

PETERS, J.—Plaintiff, Marion R. Syrek, Jr., appeals from a judgment of the superior court denying his petition for a writ of mandate whereby he sought to compel the defendants, the Unemployment Insurance Appeals Board and its Director of Employment, to pay him certain unemployment insurance benefits that had been refused by defendants. The District Court of Appeal, First District, Division One, reversed the trial court. Because of the importance of the issue involved, and because the problem is one of first impression, a hearing was granted by this court. The single issue presented is whether plaintiff's conscientious objection to the loyalty oath,[1]

[1]The loyalty oath referred to is that provided by section 3 of article XX of the Constitution of the State of California, which reads as follows:

"Sec. 3. Members of the Legislature, and all public officers and employees, executive, legislative, and judicial, except such inferior officers and employees as may be by law exempted, shall, before they enter upon the duties of their respective offices, take and subscribe the following oath or affirmation:

" 'I, ........................, do solemnly swear (or affirm) that I will support and defend the Constitution of the United States and the Constitution of the State of California against all enemies, foreign and domestic; that I will bear true faith and allegiance to the Constitution of the United States and the Constitution of the State of California; that I take this obligation freely, without any mental reservation or purpose

which California requires as a prerequisite to governmental employment, constitutes "good cause" for refusing to apply for employment with a county agency, as that phrase is used in unemployment insurance laws.[2] Stated another way, is a position with a governmental agency "suitable employment," the refusal of which will bar a conscientious objector from the benefits of the unemployment statutes?

"Good cause," "suitable employment," and "conscientious objection" are all matters which must be measured in light of the facts of the particular case. The following facts are of particular significance:

1. Although plaintiff refused to apply for employment with a governmental agency on the ground that he conscientiously objected to the loyalty oath required of all government employees, he willingly took the oath required of witnesses at all stages in the proceedings below, and testified without objection or claim of privilege;

2. In partial explanation of his objection to the loyalty oath, plaintiff pointed particularly to that portion which requires a governmental employee to aver that he never will, in the future, advocate the overthrow of the state or federal govern-

---

of evasion; and that I will well and faithfully discharge the duties upon which I am about to enter.

" 'And I do further swear (or affirm) that I do not advocate, nor am I a member of any party or organization, political or otherwise, that now advocates the overthrow of the Government of the United States or of the State of California by force or violence or other unlawful means; that within the five years immediately preceding the taking of this oath (or affirmation) I have not been a member of any party or organization, political or otherwise, that advocated the overthrow of the Government of the United States or of the State of California by force or violence or other unlawful means except as follows:..............................
.............. (If no affiliations, write in the words "No Exceptions") and that during such time as I hold the office of ......................
.................... (name of office) I will not advocate nor become a member of any party or organization, political or otherwise, that advocates the overthrow of the Government of the United States or of the State of California by force or violence or other unlawful means.'

"And no other oath, declaration, or test, shall be required as a qualification for any public office or employment.

" 'Public officer and employee' includes every officer and employee of the State, including the University of California, every county, city, city and county, district, and authority, including any department, division, bureau, board, commission, agency, or instrumentality of any of the foregoing."

[2]Section 1257 of the Unemployment Insurance Code provides that a person, otherwise entitled to unemployment benefits, shall be disqualified if, without "good cause," he either refuses to accept "suitable employment" when offered to him, or refuses to apply for such employment when notified thereof by a public employment office.

ment by force or violence, and testified, in explanation of his belief, that the established government of the United States was overthrown by force and violence in 1776, and that circumstances might occur in the future whereby the government might again become a dictatorship, in which event it would be the duty of patriotic citizens to advocate force and violence;[3]

3. No evidence was produced, and no claim has been made that plaintiff is disloyal, or that he has been connected or associated with any subversive person or organization.

It is our view that the opinion of the appellate court written by the Honorable Preston Devine and concurred in by Bray, P. J., and Tobriner, J., correctly disposed of all issues presented. We adopt that opinion as the opinion of this court. It reads as follows:

"Appellant, Marion R. Syrek, Jr., was denied a writ of mandate which he had sought for the purpose of compelling the payment to him of unemployment insurance benefits. He had been denied payment because he had declined to apply for a civil service position which was available. He had declined to apply for the civil service position chiefly because he objected to taking the loyalty oath which is required of all civil service employees.

"It is undisputed that Syrek diligently sought work in his trade as multilith operator elsewhere than in government positions. He applied for work with 12 corporations; he registered with several employment agencies; he was studying certain skills connected with his occupation at a trade school in the daytime, but was willing to shift his studies to the night-time if he could get daytime employment.

"He registered on January 22, 1956, with the Department

---

[3]It should be noted that the Declaration of Independence declares certain "truths to be self-evident," among which are the existence of basic human rights, the fact that the purpose of government is to secure those rights, and that "whenever any Form of Government becomes destructive of these ends, it is the Right of the People to alter or to abolish it, and to institute new Government, . . ." It is true that, under our form of government, peaceful means are provided for securing change— i.e., the will of the majority expressed through free elections. But the oath required by the Constitution does not simply require government employees to promise not to advocate force and violence against any future government placed in office by a majority of the people through the means of free elections, but requires a promise not to advocate governmental change by force and violence under any circumstances—i.e., even if our government were seized by fascists or communists. Objection to such an all inclusive oath is not necessarily indicative of a subversive state of mind.

of Employment but he left blank the place where willingness to apply for a civil service position could be checked. His willingness to seek work in several other ways he indicated by checking. On February 24, 1956, the Department of Employment referred him to the Alameda County Civil Service Commission, where there was available a permanent job as multilith operator at wages of $250 per month, which would increase to $264 in six months. It is conceded by the parties to this litigation that the position was compatible with appellant's abilities and, except for matters connected with declarations of loyalty, was acceptable. Appellant declined to make application for the position.

"His first statements were that he 'was prejudiced' and 'was allergic to civil service positions.' He stated his reasons as follows: (1) In a written statement to an interviewer for the Department of Employment, on March 1, 1956: 'I have declined to make application for a civil service job at Alameda County because all Civil Service jobs in this state require an applicant to answer questions involving membership in organizations and political activities. I do not recognize the right of any employer to ask these questions, and I have never answered them in the past. Since I cannot be hired without answering these questions I do not apply for Civil Service jobs'; (2) On March 9, 1956, a reviewing official of the department made a note at the bottom of the statement, 'reviewed and deemed correct. Claimant stated that under certain circumstances government should be overthrown, so will not apply for civil service job.'

"Meanwhile, on March 2, 1956, the department denied unemployment insurance benefits to Syrek. On March 8, 1956, he appealed to a referee, and declared of himself: 'He had good cause to refuse the referral. He is conscientiously opposed to an inquiry by the State into his political opinions and associations. In order to secure State or County employment, he must submit to such an inquiry. Consequently, he cannot accept public employment.'

"At a hearing before the referee for the Department of Employment, Division of Appeals, Syrek was asked what idea he was attempting to convey in his earlier statement about overthrow of the government and he replied: 'The specific opinion that the Levering Act requires is that a person must certify that he does not advocate the overthrow of the government of the United States or the State of California by force

or violence, and that he has not done so in the past and will not do so in the future. Now there are certain circumstances under which it is my belief that the government of the United States should be overthrown. Specifically, any time that the government turns into a dictatorship which can be done by legal means—there have been occasions in American history in the past when the government of the United States has been overthrown by force and violence.

" 'Q. You don't mean the government of the United States, do you? A. The government that was in existence in 1776.

" 'Q. I see. A. And I think I certainly uphold that, and would recommend a similar course of action under similar circumstances in the future.

" 'Q. Do I get your statement correctly then that in the event of a dictatorship in the United States, if one were established, or in the case of tyrannical rule, that you advocate the violent overthrow of the government? A. Yes, sir, that is my opinion, and I advocate and I intend to advocate it in the future. As a result I cannot sign the loyalty oath.'

"Further, he testified, 'The main reason I refuse it is because of the loyalty oath, which all persons in civil service must sign.'

"The referee decided against Syrek's claim, giving in the 'reasons for decision,' the following conclusion: ' [T]he claimant's rejection of the referral because of his aversion to signing a loyalty oath would not furnish him with good cause. . . .'

"The decision of the California Unemployment Insurance Appeals Board, which is the highest administrative tribunal in its field, adopted the statement of facts, reasons for decision, and decision of the referee as its own.

"The trial court, upon reviewing the transcript before the referee, found that Syrek had refused the referral on the ground that he refused to take or subscribe the loyalty oath required of all government employees, and concluded that the claimant had not been denied any substantial rights secured to him by law.

"There was no evidence in the record of any acts of Syrek's of a disloyal nature, no evidence of Communist affiliation, and no evidence of public or private statements on his part urging overthrow of the government.

"Whether he conceived the dictatorship which he envisaged as a possibility in this country as being fascism, nazism, communism, or any particular form of government we cannot tell.

However, he did state that the dictatorship could be accomplished 'by legal means.' He was willing to take an oath as witness and did take that oath, and did testify under that oath, that he could not conscientiously, under his convictions, take the loyalty oath.

''The original briefs of the parties and the brief of amicus curiae discussed chiefly the constitutionality of the manner of applying the provisions of the Unemployment Insurance Code to petitioner's claim. It was, and is, the contention of petitioner, the appellant, that, although the applicable statutes are not in themselves unconstitutional, the particular application of the statutes, in requiring petitioner, as an applicant for unemployment insurance benefits, to seek employment which was conditioned on the taking of a loyalty oath to which he had conscientious objections, violates several constitutional rights. He contends that the procedure denies freedom of speech and of assembly, that it denies due process of law and equal protection, and that it converts the law into a bill of attainder and ex post facto law.

''We thought it likely that the problem could be solved, and ought to be solved, upon an interpretation of the statutes without delving into constitutional questions. The power of a court to declare a statute unconstitutional is an ultimate power; its use should be avoided if a reasonable statutory construction makes the use unnecessary. (*Ashwander* v. *Tennessee Valley Authority,* 297 U.S. 288, 346 [56 S.Ct. 466, 80 L.Ed. 688] ; *Estate of Johnson,* 139 Cal. 532, 535 [73 P. 424, 96 Am.St.Rep. 161].) Although in this case it is the constitutionality of the application of the statutes, rather than the constitutionality of any statute itself, which is challenged, the reason for judicial abstention from deciding constitutional questions is at least as strong in this particular case. For it is not contended by appellant that he was singled out from others in an identical position with him, nor that there was procedural abuse in the case save that of the requirement of the oath. Therefore, for the court to decide that there was an unconstitutional administration of the law would be tantamount to declaring that if a statute were to require expressly that a loyalty oath be taken as a condition to receive unemployment insurance benefits, the statute itself would be invalid. In recognition of the rule of judicial abstention from passing on constitutional issues, save in cases of necessity, we required

additional briefs on the subject of the construction of the Unemployment Insurance Code.

"We have come to the conclusion that denial of unemployment insurance benefits to appellant is not justified; first, because of the absence of any law requiring an applicant for such benefits to accept a position that is conditioned upon the taking of a loyalty oath or to forego the benefits; and second, because we regard the term 'good cause,' for declining employment, as the term is used in the code, as including conscientious objection to a required loyalty oath. The latter reason, in turn, is supported by considerations related to the public interest and to the individual's rights.

"1. *The absence of any law requiring acceptance of oath bound employment.*

"No law of this state requires a loyalty oath as a condition for receiving unemployment insurance benefits, and no law declares that an applicant must apply for a position conditioned on the taking of such an oath. The Constitution of California does not require an oath in such cases. In 1952, the Constitution was amended, by vote of the people of the state on amendments relating to loyalty, which originated in the State Assembly and were proposed by the Legislature. By article XX, section 19, public employment at every level was forbidden to anyone who advocates the overthrow of the government by force or violence or other unlawful means. Article XX, section 3, requires a loyalty oath of public employees at every level of government. Article XX, section 19, denies tax exemption to anyone who advocates overthrow of the government by force, violence, or other unlawful means. The statute which was passed for the purpose of effectuating this provision, section 32 of the Revenue and Taxation Code, was held unconstitutional because it placed the burden of proving loyalty on the applicant (*Speiser* v. *Randall,* 357 U.S. 513 [78 S.Ct. 1332, 2 L.Ed.2d 1460]; *First Unitarian Church* v. *County of Los Angeles,* 357 U.S. 545 [78 S.Ct. 1350, 2 L.Ed.2d 1484]), and no substitute statute was passed at the legislative session following these decisions.

"Thus, it appears that a rather comprehensive plan relating to loyalty, not only for employees, but also for persons seeking tax exemptions, perhaps as broad a plan as was deemed necessary and acceptable, was proposed and was adopted by the people in 1952, but nothing was said in that plan about unemployment insurance benefits.

"The statutes say nothing about taking either a loyalty oath or a position that requires a loyalty oath as a condition to the receiving of unemployment insurance benefits. Section 3102 of the Government Code (part of the Levering Act) prescribed loyalty oaths for government employees. The Unemployment Insurance Code is silent on the subject. No statute couples unemployment insurance benefits with loyalty oaths.

"Nor is the omission to mention loyalty oaths in the code merely an oversight. In 1949, a bill to amend section 57a of the Unemployment Act (which is the predecessor of the code), to require that a statement of loyalty, in a prescribed form accompany every claim for unemployment insurance benefits was proposed in the state Senate but was not reported out of the Committee on Social Welfare to which it has been referred. (Sen. Bill 1127 [1949], Sen. Fin. Hist. p. 338.)

"In the brief of amicus curiae, submitted in reply to appellant's arguments against the constitutionality of the particular mode of administering the law as it affects appellant, it is related that a statute of Ohio requiring loyalty oaths of applicants for unemployment insurance benefits was held constitutional in *Dworken* v. *Collopy*, 91 N.E.2d 564, appeal dismissed, 118 N.E.2d 857, and *State* v. *Hamilton*, 110 N.E.2d 37. Appellant has argued against the validity of these decisions but we need not, and should not, decide whether a similar statute, if passed in California, should be held to be constitutional or not. The argument does point up the fact, however, that Ohio does expressly demand the oath, in Ohio Revised Code, section 4141.28, while the California code does not do so.

"It is true that the administrative officers of the Department of Employment did not directly demand the taking of a loyalty oath as a condition to receiving benefits. If they had done so as to Syrek, no doubt they would have done so as to all applicants, for every kind of work. That such a ruling by an administrative agency, unsupported by statute, would be an illegal assumption of legislative power, would seem to be beyond doubt. The department referred the applicant to employment which required the oath. This removes the oath taking requirement by one step, but we do not believe that there is an essential difference. The impact of the requirement of the oath would be felt only by those applicants who cannot take the oath conscientiously and who are referred to government employment. The fortuity of job openings with government, or the particular referral decided upon by an

officer or employee of the Department of Employment would be the deciding factor. An unemployed person who actually might be very disloyal might receive benefits if it happened that he was not directed to employment which required the oath. It would seem that if the law is to require loyalty oaths in such a case as the one before us, the law should say so.

"2. *There was 'good cause' for the refusing of the employment.*

"A. *The term 'good cause.'*

"Section 1257 of the Unemployment Insurance Code provides that: 'An individual is also disqualified for unemployment compensation benefits if: . . . (b) He, without good cause, refused to accept suitable employment when offered to him, or failed to apply for suitable employment when notified by a public employment office.' Section 1258 of the same code defines 'suitable employment,' so far as relevant here, as 'work in the individual's usual occupation or for which he is reasonably fitted. . . .' The work itself, which was offered to appellant, prescinding from the loyalty matter, seems to be conceded to have met the definition of 'suitable employment.' But section 1257 recognizes a second element, that of 'good cause.' The term is not defined in the code. We believe that the term 'good cause' as used in the statute means an adequate cause, a cause that comports with the purposes of the Unemployment Insurance Code and with other laws. Regarding it so, we believe that appellant had good cause for his refusal, from the standpoint of public interest and from that of individual rights.

"B. *Good cause from the standpoint of public interest.*

 "The state has a vital interest in having as its employees, and as employees of its political subdivisions, only those who conscientiously can take the loyalty oath prescribed in article XX, section 3, of the Constitution of California. Indeed, it has been upon consideration of avoiding at least the substantial evil of public insecurity that the loyalty oath has been sustained as a condition to public employment, *Garner* v. *Board of Public Works,* 341 U.S. 716 [71 S.Ct. 909, 95 L.Ed. 1317], *Adler* v. *Board of Education of The City of New York,* 342 U.S. 485 [72 S.Ct. 380, 96 L.Ed. 517, 27 A.L.R.2d 472], *Steinmetz* v. *California State Board of Education,* 44 Cal.2d 816 [285 P.2d 617], *Pockman* v. *Leonard,* 39 Cal.2d 676 [249 P.2d 267], *Hirschman* v. *County of Los Angeles,* 39 Cal.2d 698

[249 P.2d 287, 250 P.2d 145], *Steiner* v. *Darby,* 88 Cal.App.2d 481 [199 P.2d 429], or as a condition to candidacy for public office, *Gerende* v. *Election Board,* 341 U.S. 56 [71 S.Ct. 565, 95 L.Ed. 745], or as a condition for receiving benefits by a labor union under the Labor Relations Act, when officials' actions might imperil interstate commerce. (*American Communications Ass'n* v. *Douds,* 339 U.S. 382 [70 S.Ct. 674, 94 L.Ed. 925].) There is no possible misuse of trust by one who because of his convictions or his conscientious doubts, declines to apply for government employment.

"It has been held that a certificate, showing that an applicant for public housing did not belong to certain organizations, could not be required, even under the existing federal statute which forbade public housing to members of such organizations (the 'Gwinn Amendment,' Public Law 455, 82d Cong., 66 Stat. 403, 42 U.S.C.A. § 1411c), where there was no threatened evil relevant to the purposes of public housing, comparable to the suppressing of first amendment freedoms. (*Lawson* v. *Housing Authority of City of Milwaukee,* 70 N.W. 2d 605, cert. den. 350 U.S. 882 [76 S.Ct. 135, 100 L.Ed. 778] ; to the same effect, see *Housing Authority* v. *Cordova,* 130 Cal. App.2d Supp. 883 [279 P.2d 215].)

■■■ "In the case before us, there is not a mere irrelevancy. There is a very real possibility that the oath requirement as a condition for unemployment insurance would work at cross-purposes with the constitutional plan for the employing by government of persons whose consciences justify their taking the loyalty oath. The pressure put on an unemployed person to take the oath or to go without benefits, perhaps when he is in desperate circumstances, may lead to the taking of the oath with reservations, or with actual falsehood. It would seem, from the Constitution of California, article XX, section 3, that government employment is to be reserved for those who find no conflict between their basic political ideas and associations and the declarations contained in the prescribed oath. It would seem to be 'good cause,' from the standpoint of the state, for an unemployed person to decline to take a grudging and dubious pledge of fealty when the privilege of public service is offered to him.

"We conclude that there is good cause, under section 1257 of the Unemployment Insurance Code, from the standpoint of the public interest, for an applicant for benefits to refuse to take an oath to which he cannot conscientiously subscribe,

and it is immaterial whether or not his motives took into consideration the public interest.

"C. *Good cause from the standpoint of individual's rights.*

█ "As stated above, we do not decide upon the subject of constitutionality of the ruling by the Department of Employment. We do hold, however, that at least in the absence of any statute to the contrary, an applicant for unemployment insurance benefits has good cause for declining public employment because of stated conscientious objection to taking a loyalty oath, looking at the situation from the standpoint of the individual's rights. If the applicant's conscience is not so settled that he may take the oath unreservedly, he must, if the rulings made herein stand, take the oath dishonestly, or change his ideas about government, or do without the benefits.

"The first of these alternatives we have considered above as a possible danger to the public interest. As to the second, it is of course desirable that a person of subversive tendencies or of doubtful allegiance or of uncertain mind about the subject matter of the oath, should overcome any disloyal attitude; but the way of winning unqualified and permanent loyalty traditionally and constitutionally has been to allow a large measure of freedom rather than to use political or economic force. Even when statutes limiting these freedoms have been upheld under extraordinary exigencies, the Supreme Court of the United States has said that there is delicacy and difficulty in the deciding. (*Schneider* v. *State*, 308 U.S. 147, 161 [60 S.Ct. 146, 84 L.Ed. 155].) Limitation of those freedoms by an administrative ruling, even if the limitation is done indirectly by job referral, cannot be supported.

"The final alternative is that the unemployed person shall forego the benefits. This alternative collides with the declared policy of the state to ease the burdens of unemployment, save, in general, where it is voluntary. To this, amicus curiae replies that the unemployment *is* voluntary, for it is purely a personal choice. It is true that it is 'personal,' but so, in a sense, are all of a person's rights. We do not regard it as 'personal' in the sense that it is a mere preference. Thus, we do not regard the oath requirements as analogous to the requirement that, in certain cases, an applicant must take a job which requires him to join a union, despite the fact that he may dislike unions intensely. It is not necessary for the Department of Employment to make applicants content with proffered employment.

Oath taking is a more fundamental thing. The oath giving authority need not be content with the oath, but may put searching questions to an applicant for government employment. (*Beilan* v. *Board of Education,* 357 U.S. 399 [78 S.Ct. 1317, 2 L.Ed.2d 1414] ; *Lerner* v. *Casey,* 357 U.S. 468 [78 S.Ct. 1311, 2 L.Ed.2d 1423].)

"*Nature of Unemployment Insurance Benefits*

■ "It is argued in the amicus curiae brief that the unemployment insurance fund is part of an insurance system, is financed by a payroll tax on employers only, and is not a bounty granted by the state. It is contended that employers should not have to bear the burden of providing benefits to those who choose, for such reasons as Syrek's, to decline available employment. However, once the tax has been collected, although the fund may be earmarked for a special purpose, it is the property of the State of California. It has been held that the government may not withhold a privilege to which it has no vested right on condition that the prospective recipient surrender a constitutional right. (*Frost* v. *Railroad Com.,* 271 U.S. 583, 593 [46 S.Ct. 605, 70 L.Ed. 1101, 47 A.L.R. 457] ; *Hannegan* v. *Esquire, Inc.,* 327 U.S. 146 [66 S.Ct. 456, 90 L.Ed. 586] ; *Danskin* v. *San Diego Unified Sch. Dist.,* 28 Cal.2d 536 [171 P.2d 885] ; *Lawson* v. *Housing Authority of City of Milwaukee, supra,* 70 N.W.2d 605, cert. den. 350 U.S. 882 [76 S.Ct. 135, 100 L.Ed. 778].) We think in the present case that although the state need not legally have provided unemployment benefits for anyone, once it has done so it cannot withhold them from one who has good cause for declining a proffered employment. It is to be observed that one may vote, be publicly housed, receive public education, practice the licensed professions, use the highways, and partake of all manner of benefits without taking a loyalty oath.

"*Failure of Appellant to Apply at the Civil Service Office*

■ "Some point has been made of the fact that Syrek did not go to the civil service commission in response to the referral. We do not regard that as of importance, because the case was tried, as the findings of fact and conclusions of law show, not upon any failure of Syrek to make his appearance before the civil service commission, but upon the proposition of the taking of the oath. Had Syrek gone to the place of prospective employment and simply announced his opposition to the oath and his refusal to sign it, of course, the officer

in charge would have had to reject him under section 3102 of the Government Code, cited above. If the officer had inquired into Syrek's reasons, we think he still must have rejected him. It would not, we think, be the function of a hiring officer to weigh the political opinions of an unwilling applicant, to question the accuracy of the applicant's historical allusion, or otherwise to decide the question whether or not the oath might be taken.

"*Extent of Our Holding*

"Bearing in mind that both parties to this suit and amicus curiae have said that the case does not have a precedent and our own research confirms this, we believe that we should point out the limits of our decision, particularly, because the Department of Employment no doubt makes many referrals to government positions.

"We do not hold that an applicant for unemployment insurance benefits may simply announce that he does not care to apply for positions with government, nor that he may do so upon his announcement that he does not agree with the loyalty oath requirement in general, nor that he may do so even as to the requirement of the loyalty oath as to himself if his objection is simply antipathy to the requirement, because such a case is not before us. We do hold that when an applicant declines to take the oath and states his own conscientious objection to the taking, and there is no finding that his stated objection is a sham for the purpose of avoiding work or is otherwise false, the applicant may not be denied such unemployment insurance benefits as would otherwise be payable."

The judgment appealed from is reversed, and the trial court is directed to issue its writ of mandate ordering respondents to pay to appellant the unemployment insurance benefits involved.

Gibson, C. J., Traynor, J., and Dooling, J., concurred.

WHITE, J.—I dissent.

Article XX, section 3 of the Constitution of this state requires that before entering upon their duties all public officers and employees shall take and subscribe an oath or affirmation which, in essence, binds them to support and defend the Constitutions of the United States and of the State of California against all enemies, foreign and domestic; to bear true faith

and allegiance to these Constitutions; that such person does not himself advocate nor is he a member of any political party or other organization that advocates the overthrow of the national or state government *by force or violence or by other unlawful means;* that for five years immediately preceding the taking of such oath or affirmation, he has not been a member of any such subversive organization; and that during the time he holds such office or employment *he will not himself advocate or become a member of any party, political or otherwise, that advocates the destruction of the federal or state governments by force or violence or any other unlawful means.*

As the majority opinion correctly states, this appeal presents but a single issue which, as I view the record, involves an answer to the question whether plaintiff's aversion and refusal to subscribe the foregoing California loyalty oath constitutes "good cause" for refusing to apply for "suitable employment" offered to him by the Department of Employment with the Alameda County Civil Service Commission, as the phrase "good cause" is used in the unemployment insurance law.

Section 1257 of the Unemployment Insurance Code, insofar as here pertinent, disqualifies a person otherwise entitled to unemployment benefits when without "good cause" such person refuses to apply for "suitable employment" when notified thereof by a public employment office.

The term, "suitable employment," insofar as here relevant is defined by section 1258 of the Unemployment Insurance Code as "work in the individual's usual occupation or for which he is reasonably fitted. . . ." It is conceded that the work to which plaintiff was referred by the Department of Employment met the aforesaid code definition of "suitable employment." Such being the case, plaintiff relies primarily on the contention that since he has a "conscientious objection" to swearing allegiance to the federal and state governments, their protection against all enemies, foreign and domestic, and that he will not himself advocate or associate himself with parties or organizations advocating the overthrow of such governments by force and violence or other unlawful means, he is immune from the denial of unemployment benefits to him because his conscientious objection to subscribe the loyalty oath furnishes "good cause," as that term is used in the code, for his refusal to apply for a position wherein he would be required to take the oath here in question.

The reasons assigned by plaintiff for refusing to subscribe

the oath are rather fully set forth in the majority opinion and need not here be repeated. Suffice it to say that they may be thus epitomized : Plaintiff reserves unto himself the right to determine when certain circumstances have arisen which in his opinion warrant the overthrow of the existing federal or state governments; at such time he will advocate by speech and will join in a concerted action to overthrow said governments by force and violence; the foregoing without regard to and in violation of the provisions of our constitutions which declare that all political power is inherently in the people and that they may peacefully change our form of government by ballots rather than by bullets. If plaintiff's philosophy furnishes "good cause" for excusing a profession of loyalty under the protective provisions of the Constitutions of the United States and of the State of California, then well may it be said that these constitutions contain within themselves the seeds of their own destruction.

In explanation of his attitude toward taking a loyalty oath, plaintiff testified that the then established government of the United States was overthrown by force and violence through the Revolutionary War of 1776 and the majority opinion notes that our Declaration of Independence recognizes the existence of "basic human rights," and that to secure those rights is the purpose of government as evidenced by the language of the Declaration of Independence ". . . that whenever any form of government becomes destructive of these ends, it is the right of the people to alter or abolish it, and to institute new government. . . ." To me a comparison between the tyrannical bondage imposed upon the colonists by the King of Great Britain and the inherent right of the people of the United States to control by constitutional changes the form of their government seems unreasonable indeed. After setting forth a long list of outrages perpetrated against them by Great Britain's King, including "He has abdicated government here by declaring us out of his protection and waging war against us" by ". . . taking away our charters, abolishing our most valuable laws, and altering, fundamentally, the forms of our governments. . . ." He has also "Forbidden his governors to pass laws of immediate and pressing importance, unless suspended in their operation till his assent should be obtained; and when so suspended, he has utterly neglected to attend to them. . . . He has refused to pass other laws for the accommodation of large districts of people, unless those people

would relinquish the right of representation in the legislature —a right inestimable to them, and formidable to tyrants only. . . . For suspending our own legislatures, and declaring themselves invested with power to legislate for us in all cases whatsoever. . . . He has plundered our seas, ravaged our coasts, burned our towns, and destroyed the lives of our people. . . . He is at this time transporting large armies of foreign mercenaries to complete the works of death, desolation, and tyranny, already begun, with circumstances of cruelty and perfidy scarcely paralleled in the most barbarous ages, and totally unworthy the head of a civilized nation.'' And finally, ''In every stage of these oppressions we have petitioned for redress in the most humble terms; our repeated petitions have been answered only by repeated injury. A prince whose character is thus marked by every act which may define a tyrant, is unfit to be the ruler of a free people.''

I am at a complete loss to find any reasonable comparison between the tyrannical form of a really foreign government sought to be abolished by the immortal Declaration of Independence and a government established and functioning pursuant to the Constitution of the United States which, as heretofore pointed out, reposes all legislative and political powers in a Congress elected by the people as prescribed by the electors in each state, and which provides a method by which the people may change or alter their form of government, together with the Constitution of the State of California which provides that ''All political power is inherent in the people. Government is instituted for the protection, security and benefit of the people, and they have the right to alter or reform the same whenever the public good may require it'' (art. I, § 2), and which Constitution affords the right of initiative and referendum with regard to legislation as well as the recall of all elective public officials.

Plaintiff does not attack the constitutionality of the applicable statute but asserts that the application thereof to him as an applicant for unemployment insurance benefits requiring him to accept a referral to employment that demands of him a loyalty oath to which he has conscientious objections does violence to several of his constitutional rights. His first claim in that regard is that the procedure denies him freedom of speech and of assembly. The loyalty oath here in question is designed to protect the people not against what communists or other kindred subversive organizations or individuals advocate

or believe, but against what the people in adopting the constitutional amendment and the Legislature have considered they *have done* and are *likely* to do again. Conceding that restriction on speech and assembly cannot be sustained unless the evil itself is ''substantial'' and ''relatively serious,'' or sometimes ''extremely serious'' thus creating what is commonly called ''clear and present danger'' nevertheless, as was said in *Dennis* v. *United States*, 341 U.S. 494, 509 [71 S.Ct. 857, 867, 95 L.Ed. 1137], ''Overthrow of the Government by force and violence is certainly a substantial enough interest for the Government to limit speech. Indeed, this is the ultimate value of any society, *for if a society cannot protect its very structure from armed internal attack*, it must follow that no subordinate value can be protected. If, then, this interest may be protected, the literal problem which is presented is what has been meant by the use of the phrase 'clear and present danger' of the utterances bringing about the evil within the power of Congress to punish.

''*Obviously, the words cannot mean that before the Government may act, it must wait until the putsch is about to be executed, the plans have been laid and the signal is awaited. If Government is aware that a group aiming at its overthrow is attempting to indoctrinate its members and to commit them to a course whereby they will strike when the leaders feel the circumstances permit, action by the Government is required.* The argument that there is no need for Government to concern itself, for Government is strong, it possesses ample powers to put down a rebellion, it may defeat the revolution with ease needs no answer. For that is not the question. Certainly an attempt to overthrow the Government by force, even though doomed from the outset because of inadequate numbers or power of the revolutionists, is a sufficient evil for Congress to prevent. The damage which such attempts create both physically and politically to a nation makes it impossible to measure the validity in terms of the probability of success, or the immediacy of a successful attempt.'' (Emphasis added.)

The majority opinion places its imprimatur upon a decision that holds that the State of California must give unemployment benefits to an individual when a position consistent with said individual's capabilities, earnings and work pattern is available to him and he refuses the same on the sole ground of objection to a loyalty oath which would circumscribe only unlawful acts (see Smith Act, U. S. Code, tit. 18, § 2385). The

majority of this court grounds such holding upon the premise that "No statute couples unemployment insurance benefits with loyalty oaths," and that plaintiff ". . . had good cause for his refusal, from the standpoint of public interest and from that of his individual rights." With this I cannot agree. As to the public interest, it may well be said that unemployment insurance is not a matter of right. It could be abolished or changed. Neither plaintiff nor the majority opinion herein challenges the constitutionality of the statute were it to require a loyalty oath as a condition precedent to the receipt of unemployment insurance benefits. Wherein therefore, is there a denial of due process in the procedure adopted herein by the Department of Employment? The public policy of the state is contained in section 100 of the Unemployment Insurance Code. In that declaration of policy the state has said, and the Legislature declares, that for the public good and general welfare of the citizens of this state the enactment of a measure for the compulsory setting aside of funds to be used for a system of unemployment insurance providing benefits for persons unemployed through no fault of their own, and to reduce involuntary unemployment and the suffering occasioned thereby to a minimum, is required. As correctly pointed out in the majority opinion, once the unemployment insurance tax has been collected, although it may be earmarked for a special purpose, it is the property of the State of California. However, in administering this fund, the state has a definite interest in and obligation to administer the same with fairness to those from whom the funds are obtained, and in conformity with the aforesaid declared public policy of the state.

Viewed in this light can it be said that under section 1257 of the Unemployment Insurance Code the Unemployment Insurance Appeals Board was unreasonable in its decision to disqualify for the receipt of unemployment insurance benefits one who refuses to apply for admittedly "suitable employment" solely on the ground that to accept such employment he would be required to subscribe an oath to defend the federal and state Constitutions and would not advocate himself or join any party or organization advocating the overthrow of the Government of the United States or of the State of California by force or violence or other unlawful means? I think not.

Much of what has just been said is applicable to the holding in the majority opinion "that at least in the absence of any statute to the contrary, an applicant for unemployment insur-

ance benefits has *good cause* for declining public employment because of stated conscientious objections to taking a loyalty oath, looking at the situation from the standpoint of the individual's rights.'' (Emphasis added.)

The unemployment insurance program operates under the auspices of and is supervised and administered by the State of California. To me it appears implicit that under the public policy of this state as to loyalty oaths and the administration of the act here in question, the subversive philosophy of plaintiff in his assertion of the right to overthrow the federal and state governments by force and violence or other unlawful means forecloses him from the rights and privileges of participating in that program. History even in our own times warns us that the saddest epitaph ever carved to the memory of a vanished free state is that its people failed to raise their hands to keep their freedoms and liberties while yet they had that power.

I would affirm the judgment of the trial court.

Schauer, J., concurred.

McCOMB, J.—I concur unqualifiedly in the excellent dissenting opinion of Mr. Justice White.

I am certain that the *taxpayers* will be surprised and astounded to learn that the *majority of this court* has held that they are required to have their hard-earned taxes given to support *in idleness* a person who refuses to take an obligation not to overthrow, by *force* and *violence,* the government of the United States of America, a form of government which it is conceded by all has furnished to everyone in this country the highest standard of living and the maximum amount of individual personal freedom in recorded history.