## CHRYSLER CORPORATION *v.* LOSADA.
### DECISION OF THE COURT.

1. UNEMPLOYMENT COMPENSATION—SUITABILITY OF WORK OFFERED—
GOOD CAUSE FOR REFUSAL.

> Order of circuit court denying unemployment compensation to claimant is ordered reversed and the cause remanded, for further proceedings to determine suitability of work offered laid-off claimant, per T. M. KAVANAGH, C. J., and SMITH and ADAMS, JJ.; for further proceedings to ascertain whether or not claimant's refusal was for good cause, per SOURIS, J.; and for remand for entry of order affirming order of appeal board granting compensation, per BLACK, J. (CLS 1961, § 421-.29).

### SEPARATE OPINION.
T. M. KAVANAGH, C. J., and SMITH and ADAMS, JJ.

2. UNEMPLOYMENT COMPENSATION—DISQUALIFICATION FOR BENEFITS
—OFFER OF SUITABLE WORK—REFUSAL TO ACCEPT FOR GOOD CAUSE.

> *Disqualification for unemployment compensation benefits under the employment security act provision where an individual "has failed without good cause to accept suitable work when offered him" requires, first, that there be a determination that* suitable work *was offered and if it be found that such was offered, then the issue of* good cause *must be determined (CLS 1961, § 421.29).*

REFERENCES FOR POINTS IN HEADNOTES

[1–3, 5–7] 48 Am Jur, Social Security, Unemployment Insurance, and Retirement Funds § 35.
Circumstances of leaving employment, availability for work, or nature of excuse for refusing re-employment as affecting right to social security or unemployment compensation. 158 ALR 396, 165 ALR 1382.
[4] 20 Am Jur 2d, Costs § 16.
[8–11] 48 Am Jur, Social Security, Unemployment Insurance, and Retirement Funds §§ 35, 49.

3. Same—Disqualification for Benefits—Suitable Work—Record.
    *Precedential decision of whether or not suitable work had been offered laid-off employee is not made, where record made in claimant's proceeding before employment security commission referee and the appeal board for unemployment compensation indicates that neither agency viewed the facts as to suitability of the work from the standpoint of full statutory criteria in passing on the issue of disqualification for benefits (CLS 1961, § 421.29).*

4. Costs—Unemployment Compensation—Neither Party Succeeding in Full.
    *No costs are allowed on claimant's appeal in proceeding to recover unemployment compensation benefits, where record is such that a precedential decision on the primary issue to be determined may not properly be made, neither party having succeeded fully (CLS 1961, § 421.19).*

SEPARATE OPINION.

SOURIS, J.

5. Unemployment Compensation—Disqualification for Benefits —Offer of Suitable Work—Refusal to Accept for Good Cause.
    *Disqualification for unemployment compensation benefits under the employment security act provision where an individual "has failed without good cause to accept suitable work when offered him" requires, first, that there be a determination that* suitable work *was offered and if it be found that such was offered, then the issue of* good cause *must be determined (CLS 1961, § 421.29).*

6. Same—Disqualification for Benefits—Suitability of Work Offered—Question of Fact.
    *Whether or not claimant was disqualified for unemployment compensation benefits because he had declined an offer of suitable work requires, as a determination of fact, that there had been an offer of suitable work, the suitability of the work to be determined according to standards set forth in the employment security act (CLS 1961, § 421.29).*

7. Same—Inferences—Suitability of Work Offered—Good Cause for Refusal.
    *A finding of suitability of work offered claimant for unemployment compensation is inferred, where attention of both the employment security commission referee and the appeal board was focused upon the question of good cause for refusal of the tendered employment (CLS 1961, § 421.29).*

8. SAME—GOOD CAUSE FOR REFUSAL OF OFFERED WORK—QUESTION OF
LAW.

> Issue of good cause for the refusal of employment offered a
> laid-off employee, in order to be not disqualified from unemploy-
> ment compensation is a question of law, once the facts are
> found (CLS 1961, § 421.29).

9. SAME—DISQUALIFICATION FOR BENEFITS—REFUSAL OF PROFFERED
EMPLOYMENT—GOOD CAUSE—RECORD.

> Remand of proceeding is ordered for presentation of more
> comprehensive factual groundwork for making determination
> as to whether refusal to accept work offered laid-off employee
> was for good cause, where present record is inadequate (CLS
> 1961, § 421.29).

SEPARATE OPINION.

BLACK, J.

10. UNEMPLOYMENT COMPENSATION—DISQUALIFICATION FOR BENEFITS
—REFUSAL OF PROFFERED EMPLOYMENT—GOOD CAUSE—FINDING OF
APPEAL BOARD—EVIDENCE.

> Finding of appeal board of employment security commission that
> plaintiff was not disqualified from receiving unemployment
> compensation benefits, since the offer to him of suitable work
> was declined for good cause, being supported with fair evi-
> ·dentiary support, should have been affirmed when reviewed
> by the circuit court (CLS 1961, § 421.29).

DISSENTING OPINION.

DETHMERS, KELLY, and O'HARA, JJ.

11. UNEMPLOYMENT COMPENSATION—DISQUALIFICATION FOR BENEFITS
·—REFUSAL OF PROFFERED EMPLOYMENT—GOOD CAUSE.

> Circuit court order, reversing decision of employment security
> commission appeal board as a matter of law, which board had
> reversed the decision of the referee who had · denied unem-
> ployment compensation because claimant was disqualified by
> reason of having refused to accept proffered employment with-
> out good cause is affirmed under record presented (CLS 1961,
> § 421.29).

Appeal from Ingham; Hughes (Sam Street), J.
Submitted October 8, 1964. (Calendar No. 20,
Docket No. 50,392.) Decided July 13, 1965.

Claim for unemployment compensation by John Losada against Chrysler Corporation and Michigan Employment Security Commission. Claim denied by referee. Appeal to commission appeal board. Reversed. Review by certiorari in circuit court. Reversed. Appeal by claimant to Supreme Court. Reversed and remanded.

*Zwerdling, Miller, Klimist & Maurer (A. L. Zwerdling, of counsel), for claimant.*

*A. William Rolf,* for Chrysler Corporation.

SMITH, J. This is an appeal from a circuit court order reversing an employment security commission appeal board decision which, itself, reversed a decision of a commission referee.

The issue was whether or not John Losada, claimant, was disqualified for unemployment benefits for allegedly failing without good cause to accept suitable work when offered him. Two days after layoff, Losada was offered a choice of two jobs, each somewhat different from his customary employment and each at an hourly rate slightly less than he had enjoyed before layoff.

Relevant statutory provisions read as follows:

"Sec. 29(1) An individual shall be disqualified for benefits:

"(a) For the duration of his unemployment in all cases where the individual: * * * (5) has failed *without good cause* to accept *suitable work* when offered him. * * *

"An offer of employment in the individual's customary occupation, under the conditions of employment and remuneration substantially equivalent to those under which the individual has been customarily employed in such occupation, *shall be deemed suitable work. In determining whether or not any*

*work is suitable* for an individual, the commission shall consider the degree of risk involved to his health, safety and morals, his physical fitness and prior training, his experience and prior earnings, his length of unemployment and prospects for securing local work in his customary occupation, and the distance of the available work from his residence." Michigan employment security act, CLS 1961, § 421.29, subd(1)(a)(5) (Stat Ann 1960 Rev § 17.531 subd [1][a][5]). (Emphasis supplied.)

Disqualification under this section depends upon two essential findings of fact: (1) that suitable work was offered; and (2) that claimant failed without good cause to accept. It seems patent that the first issue which must be determined is whether the work offered was suitable. If the work is found to be not suitable, there is no necessity to make a finding as to whether claimant failed without good cause to accept such work. If, on the other hand, work offered is found to be suitable then the issue of good cause must be determined.

Further, the section sets out in definitive fashion, guidelines to be used in determining suitability. As appears from the statutory quote above, certain work is "deemed" suitable. In determining suitability, otherwise, the commission is required to "consider" a number of factors. The problem here is that neither the commission referee nor the appeal board appears to have considered either set of criteria of suitability in arriving at respective decisions. Both appear to have centered the whole focus upon the issue of whether claimant refused to accept with good cause.*

---

* The decision of the appeal board appears in full as follows:
"This matter is before the board upon an appeal by the claimant from a referee's decision dated July 21, 1960 which held as follows:
" 'The notice of redetermination is affirmed.
" 'Claimant failed, without good cause, to accept suitable work on April 15, 1960, and he is disqualified as of that date for the duration of his unemployment.

In each opinion (that of the referee holding for disqualification and of the appeal board, reversing) repeated references are made to the "good cause"

" 'The wages he earned with the Chrysler Corporation prior to that date may not be used to compute or pay him benefits.

" 'He did not establish a benefit year by the claim he filed April 19, 1960.'

"The claimant filed a new claim for benefits on April 19, 1960 following a layoff for lack of work with the Chrysler Corporation on April 13, 1960. On April 15, 1960 the claimant was offered work with his separating employer which he refused to accept and on May 9, 1960 the commission issued a notice of claim denied holding that the claimant refused without good cause to accept an offer of available suitable work with his separating employer and that he would be disqualified under the provisions of section 29 (1) (a) (5) of the act. On May 10, 1960, the claimant requested a redetermination which the commission issued on May 23, 1960 which affirmed its determination of May 9, 1960. On May 24, 1960 the claimant filed an appeal to a referee who, after hearings were held on June 29 and July 12, 1960, issued his decision of July 21, 1960 quoted above. The claimant then filed a timely appeal to this board.

"The claimant was employed by the Chrysler Corporation from November 29, 1954 until April 13, 1960 when he was laid off for lack of work. He actually last worked on April 8, 1960 and was absent from work on April 11, 1960 for personal reasons. When he reported for work on April 12, 1960 he was given a disciplinary layoff covering April 11, 12 and 13 of 1960 and as of that last date was laid off for lack of work. During his period of employment he worked as an assembler as well as a trimmer and cutter. At the time of his layoff he was classified as a trimmer and his base rate was $2.47 per hour. On April 15, 1960 he was called in by the employer and offered work as a press operator at the base rate of $2.32 per hour or as a spot welder at a base rate of $2.37 per hour. The two jobs which were available and which he was offered were in the same building but were actually in a different plant which operated in that building. One of the jobs offered was available on two different shifts and one of the shifts paid a premium of 11 cents an hour in addition to the rate of $2.37 per hour. *The claimant refused to accept either of the jobs* offered because if he had accepted one of them his seniority would have been transferred to the new plant and there would have been little likelihood of his recall to his former job. The claimant maintains that his experience was primarily as a trimmer and cutter and that he desired to maintain his recall to that type of work in the plant in which he was last employed. At the hearing before the referee on July 12, 1960 the employer's representative agreed in his testimony that the claimant's seniority would be transferred to the new plant, that there would be very little likelihood of claimant being recalled for his former employment and that he did not lose his seniority as a result of *his refusal to accept the jobs offered*.

"The basic issue involved herein is whether or not the claimant failed without good cause to accept an offer of available suitable work and should be disqualified under the provisions of section 29 (1) (a) (5) of the act.

issue in the findings of fact but none to the "suitability" issue.   Nor does it appear in either opinion inferentially, by the manner in which the facts were discussed, that either agency viewed the facts from the standpoint of full statutory criteria.   After discussing only the "good cause" issue, both opinions announce conclusions or holdings in statutory language as if both good cause and suitability had previously been decided as matters of fact.   In view of the state of the record, therefore, we decline to enter upon a precedential decision of the issues, particularly where, as here, we would be interpreting suitability provisions of the statute for the first time. Before there can be conclusions of law, there must be findings of fact.   *Wickey* v. *Employment Security Commission,* 369 Mich 487.   Resultingly, the circuit court order reversing the appeal board and reinstating the referee's decision must be reversed, the referee's decision being deficient in law.   On remand the circuit court will remand to the appeal board for further proceedings.

Reversed and remanded.   No costs, neither party having succeeded fully.

T. M. KAVANAGH, C. J., and ADAMS, J., concurred with SMITH, J.

---

"*We find that the refusal of jobs offered was with good cause and that such good cause was because acceptance* thereof would have caused the claimant to lose his seniority in the plant in which he previously had been employed and for the type of work which he was performing at the time of his separation.   It is accordingly held that the referee's decision holding that the claimant would be disqualified under the provisions of section 29 (1) (a) (5) of the act cannot be sustained.

"The decision of the referee is hereby reversed.

"It is held that the claimant did not fail without good cause to accept suitable work on April 15, 1960 and that he will accordingly not be disqualified under the provisions of section 29 (1) (a) (5) of the act.

"It is further held that the wages earned with the Chrysler Corporation prior to April 15, 1960 may be used as the basis for computing or paying benefits for any period subsequent to that date.

"It is also held that a benefit year may be established as a result of the claim filed on April 19, 1960."   (Emphasis supplied.)

Souris, J. After having been laid off in April, 1960, from his job as a cutter in the trim shop of plaintiff's Dodge assembly division Losada was offered a job as a spot welder or a medium press operator in plaintiff's Conant stamping division, which is located in the same building complex as the assembly division in the Dodge main plant. He refused these jobs because taking them would have required him to leave the assembly division, in which he began employment by Chrysler in November, 1954, and to lose his seniority in that division, although he would be entitled in the stamping division to credit for the seniority he had accumulated in the assembly division. Donald Hawk, who works in the employment office of the assembly division, testified that the only circumstances under which Losada might return to the assembly division would be if Losada were laid off from the stamping division while there was a shortage of workers in the assembly division. In that case Chrysler is obligated by its collective bargaining agreement to offer work in the division in which new workers are required to employees in other divisions who have been laid off, before seeking workers from the general public. Thus, if Losada were laid off from the stamping division, and if there were a shortage of workers in the assembly division, and if there were not enough other laid-off workers with more seniority than Losada to fill the vacancies in the assembly division, then Losada would be offered work in the assembly division.

Losada was denied unemployment compensation benefits upon the ground that he refused without good cause to accept suitable work offered to him.[1]

---

[1] The hearing referee denied benefits, but was reversed by the appeal board which was in turn reversed by the circuit court.

Mr. Justice Smith is correct in stating that such disqualification for benefits requires determination of two issues: (1) did claimant refuse an offer of suitable work, and (2) if so, was such refusal without good cause? I think, however, that Justice Smith errs in characterizing both of these issues as issues of fact.

Whether a claimant has been offered suitable work is indeed a question of fact. See *Dynamic Manufacturers, Inc.,* v. *Employment Security Commission* (1963), 369 Mich 556, 560. This is made amply clear by the legislature's provision of standards to be considered in determining suitability of proffered work:

"An individual shall be disqualified for benefits:

"(a) For the duration of his unemployment in all cases where the individual has:   *   *   *   failed without good cause to accept suitable work when offered him.   *   *   *

"An offer of employment in the individual's customary occupation, under the conditions of employment and remuneration substantially equivalent to those under which the individual has been customarily employed in such occupation, shall be deemed suitable work. In determining whether or not any work is suitable for an individual, the commission shall consider the degree of risk involved to his health, safety and morals, his physical fitness and prior training, his experience and prior earnings, his length of unemployment and prospects for securing local work in his customary occupation, and the distance of the available work from his residence.

"Notwithstanding any other provisions of this act, no work shall be deemed suitable and benefits shall not be denied under this act to any otherwise eligible individual for refusing to accept new work under any of the following conditions: (a) If the position offered is vacant due directly to a strike, lockout or other labor dispute; (b) if the remuneration, hours or other conditions of the work offered are substan-

tially less favorable to the individual than those prevailing for similar work in the locality; (c) if as a condition of being employed the individual would be required to join a company union or to resign from or refrain from joining any bona fide labor organization." CLS 1961, § 421.29 (Stat Ann 1960 Rev § 17.531).[2]

Justice Smith writes that neither the referee nor the appeal board passed upon the factual issue of whether Losada had been offered suitable work, but rather devoted their attention to the issue of good cause. While it is true that neither said in so many words that the jobs in the stamping plant were suitable, it is evident from a reading of the opinions that the jobs were considered suitable and that, therefore, attention was focused upon the question of good cause for refusal. However, inasmuch as this case of Losada must for another reason be remanded for further proceedings before the appeal board, at that time the board may make a specific finding as to the suitability of the job in the stamping plant.

As to the issue of good cause, however, it is an issue of law, in my view. Although the appeal board must determine the facts from which the conclusion of good cause or its absence is drawn, once the facts are found that conclusion remains one of law, not of fact, and is reviewed by us as such. See the dis-

---

[2] As further indicating the factual nature of this inquiry, consider how the second paragraph of the above-quoted material was amended by PA 1963, No 226:

"An offer of employment in an occupation in the vicinity of his residence at which the individual earned wages in his base period under conditions of employment and remuneration substantially equivalent to those under which the individual has earned wages in such occupation during his base period, shall be deemed suitable work. In determining whether or not any other work is suitable for an individual, the commission shall consider the degree of risk involved to his health, safety and morals, his physical fitness and prior training, his experience and prior earnings, his length of unemployment and prospects for securing local work in his customary occupation, and the distance of the available work from his residence."

cussion of our proper scope of review in such circumstances in my opinion in *Wickey* v. *Employment Security Commission* (1963), 369 Mich 487, 493, as to which there was unanimous agreement by the Court.

The decisions of other jurisdictions construing unemployment compensation act provisions similar to the Michigan statute here involved confirm the conclusion that "good cause" is a question of law and not of fact. Thus in *Barclay White Co.* v. *Unemployment Compensation Board of Review* (1947), 356 Pa 43 (50 A 2d 336), the Pennsylvania supreme court reviewed a trial court decision upholding a board of review's decision that an employee had not refused (p 45) "without good cause    *    *    *    to accept suitable work." The employee had refused a job at a nonunion plant on the ground that to accept it would subject him to expulsion from his union. The Pennsylvania court noted that findings of fact supported by evidence were binding upon it in the absence of fraud. The employee did not argue that the offered work was not suitable, and the court found evidence to support a conclusion that it was indeed suitable. The court decided, however, that the employee's refusal of the work was without good cause:

"The decisive question in ascertaining whether or not claimant is entitled to unemployment benefits for the three weeks in question is: Did he have 'good cause,' within the legislative intent, for refusing the 'suitable work' to which he had been referred? The unemployment compensation law contains no definition of 'good cause,' and, therefore, the duty devolves upon the courts to determine the intent of the legislature in the use of those words." 356 Pa 43, 47 (50 A 2d 336, 339).[3]

---

[3] While we agree that the question of good cause is one for the Court, we do not necessarily agree with the Pennsylvania court's determination in the *Barclay White Co. Case.*

Another example of an appellate court discharging the necessary legal function of defining "good cause" is found in *Syrek v. California Unemployment Insurance Appeals Board* (1960), 54 Cal 2d 519 (7 Cal Rep 97, 354 P 2d 625). The unemployment insurance code provided that an employee would be disqualified for benefits if he (p 529) "without good cause, refused to accept suitable employment when offered to him". The appeal board had denied the employee benefits on the ground that his refusal to accept civil service jobs because he conscientiously objected to a required "loyalty oath" was without good cause. The appeal board was sustained by the trial court, which was reversed by the intermediate appellate court, whose opinion was adopted by the California supreme court in its affirmance (p 529):

" 'Section 1257 of the unemployment insurance code provides that: "An individual is also disqualified for unemployment compensation benefits if: * * * (b) He, without good cause, refused to accept suitable employment when offered to him, or failed to apply for suitable employment when notified by a public employment office." Section 1258 of the same code defines "suitable employment," so far as relevant here, as "work in the individual's usual occupation or for which he is reasonably fitted. * * *"' The work itself, which was offered to appellant, prescinding from the loyalty matter, seems to be conceded to have met the definition of "suitable employment." But section 1257 recognizes a second element, that of "good cause." The term is not defined in the code. We believe that the term "good cause" as used in the statute means an adequate cause, a cause that comports with the purposes of the unemployment insurance code and with other laws. Regarding it so, we believe that appellant had good cause for his refusal, from the standpoint of

public interest and from that of individual rights.' "
54 Cal 2d 519, 529 (354 P2d 625, 630, 631).

As was noted in *Wickey, supra,* a conclusion of
law requires as a basis findings of fact. The record
now before us does not provide an adequate factual
basis upon which to draw a legal conclusion con-
cerning the existence or absence of good cause for
Losada's refusal of work in the stamping plant. For
example, no evidence was presented relating to the
factual probability of Losada's transfer back to the
assembly division. Nor was there evidence pre-
sented as to the probable economic significance, in
addition to the wage differentials mentioned by Jus-
tice SMITH, of employment in the stamping division
instead of the assembly division. It might be, for
example, that work in one was relatively steady
while the other was comparatively intermittent.
Until a more comprehensive factual groundwork is
laid, I would decline to pass upon the question of
good cause, considering the inadequate factual rec-
ord now before us, and so perforce would remand to
the circuit court for its remand to the appeal board
for further proceedings.

BLACK, J.    The respective opinions Justices
SMITH, SOURIS, and O'HARA have prepared leave me
—with all outsiders—in that precedentary state of
doubt which seems to plague the profession of Mich-
igan more today than ever before. To puzzled law-
yers, and to the employment security commission, it
must be said that all we will have put forth in this
case of Losada is a result; a result which will be de-
termined only when the wheel of chance settles and
stops as judicial signatures are counted in our con-
ference room on July 13th next.

No member of the Court, writing so far, seems
interested in direct quotation of what was actually

presented to and decided by the appeal board. Here it is:

"The basic issue involved herein is whether or not the claimant failed without good cause to accept an offer of available suitable work and should be disqualified under the provisions of section 29 (1) (a) (5) of the act.

"We find that the refusal of jobs offered was with good cause and that such good cause was because acceptance thereof would have caused the claimant to lose his seniority in the plant in which he previously had been employed and for the type of work which he was performing at the time of his separation. It is accordingly held that the referee's decision holding that the claimant would be disqualified under the provisions of section 29 (1) (a) (5) of the act cannot be sustained.

"The decision of the referee is hereby reversed.

"It is held that the claimant did not fail without good cause to accept suitable work on April 15, 1960 and that he will accordingly not be disqualified under the provisions of section 29 (1) (a) (5) of the act."[*]

The quoted first paragraph presented the only controlling question the appeal board was asked to decide. Palpably, that question was one of fact. There being fair evidentiary support for the conclusions reached by the appeal board, I hold that the circuit court should have affirmed. My vote, then, is to reverse and remand for entry of order affirming the appeal board's decision.

O'HARA, J. (*dissenting*). I am constrained to disagree with my writing colleagues. To me remand in this case is not required and nothing could be added to the record already made which would

_____

[*] Since the present opinion was written Justice SMITH's opinion has been amended so as to include full quotation of the appeal board's decision.

not be merely cumulative. The suitability test as to the work offered was inherent in the testimony of claimant as to his reasons for refusal:

"*Q.* I'll read that: 'I refused the job offer because if taken I would lose all rights to recall in the trim shop.' That right?

"*A.* That's right.   *   *   *

"*Q.* You didn't want to take this job now for what reason again?

"*A.* Because I wanted to stay in my own department in my own line of work.

"*Q.* I see, if you had gone on the punch press and the spot welder job or whatever it was, you would,—

"*A.* They told us directly we'd never be called back to our own department—any other job.

"*Q.* Anything else you want to say about this?

"*A.* I don't think it's fair in a way.

"*Q.* What's not fair?

"*A.* To be disqualified for that reason.

"*Q.* You think you had a good reason for turning the job down, is that it?

"*A.* Yes, I do. I lost two weeks' vacation pay by doing it. I only had to work until the end of the month.

"*Q.* And you would have gotten qualified for vacation pay?

"*A.* $200. Yes.

"*Q.* OK—thank you very much.   *   *   *

"*The Referee:* You feel now that you've had a fair chance to tell me why you turned it down. Now the way I get it—

"*The Claimant:* Basically, I just have the one reason. I like that type of work, I'm trained for it and I feel that—

"*The Referee:* You'd lose seniority if you took—

"*The Claimant:* Not only the seniority, I'd never have a chance to get back to my own line of work.

"*The Referee:* By the way, how old are you, sir?

"*The Claimant:* 36.

"*The Referee:* How many years have you had in the cutter—

"*The Claimant:* Practically all of my time there at Dodge.

"*The Referee:* Anything else you'd like to say because they will replay this record in Detroit for the benefit of the others.

"*The Claimant:* No, I think that covers it.

"*The Referee:* OK. You feel you've had a fair hearing?

"*The Claimant:* Yes, I do."

Apparently Judge Hughes, as I do, found the record complete and he proceeded to do what Mr. Justice Souris says should be done:

"Without quarrelling with the facts found by the appeal board, which were the same facts found by the commission and the referees, the court is of the opinion that the board committed an error, *in law,* in reversing the decision of the referee." (Emphasis supplied.)

The order of the circuit court should be affirmed. Costs to appellant.

Dethmers and Kelly, JJ., concurred with O'Hara, J.