(Nos. 33296, 33312.—

CHICAGO HOUSING AUTHORITY, Appellee, *vs.* SOL AND CAROL BLACKMAN, Appellants.—CHICAGO HOUSING AUTHORITY, Appellee, *vs.* GRACE CLARK, Appellant.

*Opinion filed November 18, 1954.*

HENRY HEINEMAN, F. RAYMOND MARKS, JR., and JOHN ERICKSON, all of Chicago, for appellants Sol and Carol Blackman; ANTONOW & WEISSBOURD, of Chicago, (GEORGE S. FEIWELL, of counsel,) for appellant Grace Clark.

VON ALLAN CARLISLE, and KATHRYN M. KULA, both of Chicago, for appellee.

Mr. JUSTICE KLINGBIEL delivered the opinion of the court:

The Chicago Housing Authority, a municipal corporation, brought two separate forcible entry and detainer actions in the municipal court of Chicago, one against Sol and Carol Blackman and the other against Grace Clark. A summary judgment for plaintiff was entered in each case, and the respective defendants appeal to this court on the theory that constitutional questions are involved. Because of the similarity of issues the cases have been consolidated for opinion by this court.

Appellants are tenants in low-rent public housing projects owned and operated by appellee. They were served with notices terminating their tenancies for failure 'and refusal to subscribe to the loyalty oath required by such tenants by section 25.01 of the Housing Authorities Act. (Ill. Rev. Stat. 1953, chap. 67½, par. 25.01.) In the case of Grace Clark the tenancy was terminated on the additional ground that she refused to execute a certificate of nonmembership in subversive organizations, as required by a resolution adopted by appellee for its Federally aided projects. This resolution was adopted on or about Decem-

ber 8, 1952. At that time there was no statutory oath requirement, the latter having been added by an amendment approved July 13, 1953. Appellants attack the constitutionality of the statutory requirement on several grounds; and in the Clark appeal it is contended, in addition, that the appellee Housing Authority had no power under the statute or the constitution to require the certificate of nonmembership in subversive organizations.

Before discussing the principal questions, it is necessary to consider appellee's contentions that no constitutional issues are presented. Under the terms of the lease agreements, the tenancies are subject to termination by either party upon fifteen days' written notice. Appellee insists that since it could evict in any event merely by giving notice, the fact that it assigned as a reason therefor appellants' refusal to subscribe to the oath is immaterial and does not raise any constitutional issue. The argument, in other words, is that because the tenants have no legal right to occupy the housing accommodations, they cannot be deprived of any constitutional right by the requirements in question. The position is untenable. A similar contention was rejected in *Wieman* v. *Updegraff*, 344 U.S. 183, where State employees were required by statute to take an oath, concerning their affiliation with certain proscribed organizations, as a condition of continued employment. The court held the statute invalid, and observed: "We need not pause to consider whether an abstract right to public employment exists. It is sufficient to say that constitutional protection does extend to the public servant whose exclusion pursuant to a statute is patently arbitrary or discriminatory." A like conclusion must follow in the present case. Even though appellants have no right to remain as tenants of appellee, they may not, as a condition of continued occupancy, be required to comply with unconstitutional requirements.

Appellee also insists that appellants have no standing to challenge the constitutionality of the statute and resolution,

because they have not alleged membership in any organization advocating the overthrow of the government by force or other unlawful means. There is no merit in the contention. The designated ground for eviction is not membership or affiliation itself, but failure to take the prescribed oath. It is undisputed that appellants violated the provisions, and that the present eviction proceedings were brought against them because of such violation. Clearly they are affected by the constitutionality of the requirements, and are entitled to a determination of the constitutional issues raised. See *United Public Workers* v. *Mitchell,* 330 U.S. 75, 91-92.

The oath required of tenants by section 25.01 reads as follows: "I, ————, do swear that I am a citizen of the United States and the State of Illinois, that I am not affiliated directly or indirectly with any communist organization or any communist front organization, or any foreign political agency, party, organization or government which advocates the overthrow of constitutional government by force or other means not permitted under the Constitution of the United States of the constitution of this State; that I do not directly or indirectly teach or advocate the overthrow of the government of the United States or of this State or any unlawful change in the form of the governments thereof by force or any unlawful means." Appellants contend the requirement deprives them of due process of law because it fails to distinguish between innocent and knowing membership in such organizations, and excludes tenants solely on the basis of membership or affiliation regardless of their knowledge of the purposes of the organization. It is insisted that under the decision of the United States Supreme Court in *Wieman* v. *Updegraff,* 344 U.S. 183, the oath must fall as an assertion of arbitrary power. The *Wieman case* involved an Oklahoma statute requiring each State employee, as a condition of continued employment, to take an oath that he is not "a member of any party or

organization, political or otherwise, that now advocates the overthrow of the Government of the United States or of the State of Oklahoma by force or violence or other unlawful means" and that he is not "affiliated directly or indirectly with the Communist Party, the Third Communist International, * * * or with any agency, party, organization, association, or group whatever which has been officially determined by the United States Attorney General or other authorized agency of the United States to be a communist front or subversive organization * * *." The question presented was whether the due-process clause permits the State to exclude persons from its employ solely on the basis of organizational membership, regardless of their knowledge about the organization. It was held that the oath offended due process because of the fact that under its terms membership alone was sufficient to disqualify. The court observed: "There can be no dispute about the consequences visited upon a person excluded from public employment on disloyalty grounds. In the view of the community, the stain is a deep one; indeed, it has become a badge of infamy. Especially is this so in time of cold war and hot emotions when 'each man begins to eye his neighbor as a possible enemy.' Yet under the Oklahoma Act, the fact of association alone determines disloyalty and disqualification; it matters not whether association existed innocently or knowingly. To thus inhibit individual freedom of movement is to stifle the flow of democratic expression and controversy at one of its chief sources. We hold that the distinction observed between the case at bar and Garner, Adler and Gerende is decisive. Indiscriminate classification of innocent with knowing activity must fall as an assertion of arbitrary power. The oath offends due process." In the case at bar the oath is likewise unqualified in its terms. It does not require the tenant to swear merely that he "knowingly" or "to the best of his knowledge" is not affiliated with organizations of the proscribed char-

acter. Instead it requires him to know as a matter of certainty whether every organization to which he belongs in fact advocates the overthrow of constitutional government by force or other unlawful means. Unless he is sure that it does not he cannot conscientiously take the oath, and as a result he is excluded from the public housing accommodations. It is clear that under the authority of the *Wieman case* the present requirement violates due process of law and is void.

Appellee urges that the oath should be construed so as to include the element of scienter or guilty knowledge. We cannot agree. There is nothing in its language which would justify this court in so interpreting its requirements. As we have observed, the terms are absolute in character. We cannot rewrite them and add to what has been enacted without exceeding the scope of judicial function. The present statute does not fall within the class of criminal statutes wherein guilty knowledge is a normal element. It merely exacts an oath as a condition of tenancy. There is thus no basis for inferring a legislative intent to include scienter in the provisions of the oath. Moreover, the construction urged is not in accord with the meaning which the oath would convey to an ordinary person. A tenant required to take the oath would in all probability understand from its terms that he must be sure no organization with which he is affiliated advocates the overthrow of government by force or other unlawful means. Nothing in its language conveys the impression that he is merely negating affiliation with organizations which *to his knowledge* had the proscribed character. The construction to be placed upon such requirements should coincide as far as possible with the common understanding of the words used.

Appellant Clark contends that appellee's resolution of December 8, 1952, requiring tenants in Federally-aided projects to execute a prescribed certificate of nonmembership in subversive organizations, is beyond the scope of

powers delegated to appellee Housing Authority by the statute, and is therefore void. By this resolution it is made a condition of continued occupancy that the tenant execute a certificate reading as follows:

"I hereby certify that I am not a member of any of the organizations listed in the document entitled 'Consolidated List, dated November 10, 1952, of Organizations Designated by the Attorney General of the United States as Within Executive Order No. 9835,' and that, to the best of my knowledge, information, and belief, no person who is to occupy the housing accommodations in connection with which this certificate is furnished (that is, the accommodations for which I am making, or have made, application) is a member of any such organization. I hereby further certify that I have carefully read the document referred to in the preceding sentence."

It is not disputed that section 25 of the Housing Authorities Act, (Ill. Rev. Stat. 1953, chap. 67½, par. 25,) which governs the standards for tenant selection, fails to confer power to require such a certificate. Appellee insists, however, that section 27, which grants authority "to do any and all things necessary or desirable to secure the financial aid or cooperation of the Federal government," is sufficient. It appears that in adopting its resolution appellee purported to act pursuant to a Federal provision known as the "Gwinn Amendment," a rider to the Independent Offices Appropriation Act of 1953 (Public Law 455, 82nd Cong.), approved July 5, 1952. That provision recites that "no housing unit constructed under the United States Housing Act of 1935, as amended, shall be occupied by a person who is a member of an organization designated as subversive by the Attorney General: *Provided, further,* That the foregoing prohibition shall be enforced by the local housing authority, and that such prohibition shall not impair or affect the powers or obligations of the Public Housing Administration with respect to the making of

loans and annual contributions under the United States Housing Act of 1937, as amended."

We cannot agree with appellee that the requirement in question comes within the authority delegated by the act. While appellee may voluntarily contract with an agency of the Federal government within the authority granted to it by the State, and may take action reasonably calculated to secure the financial aid of the Federal government, such action must have some relation to the statutory purpose. The purpose of the Illinois Housing Authorities Act is to eradicate slums and provide housing for persons of low-income class. (See *Krause* v. *Peoria Housing Authority*, 370 Ill. 356, 373.) It is evident that the exclusion of otherwise qualified persons solely because of membership in organizations designated as subversive by the Attorney General has no tendency whatever to further such purpose. In *Krause* v. *Peoria Housing Authority*, we held that arbitrary discretion in the choice of tenants was not conferred on the local housing authority, since reasonable standards to guide the exercise of discretion are provided by section 25 of the act. A construction of section 27 which would enable the housing authority to prescribe conditions of eligibility having no rational connection with the purpose of the act would raise serious constitutional questions. It is a well-established rule that statutes will be construed, if possible, so as to avoid invalidity. We conclude that appellee exceeded its statutory authority in requiring appellant Clark to execute the certificate of nonmembership in subversive organizations.

For the reasons stated, the failure and refusal of appellants to subscribe to the loyalty oath, or to the certificate of nonmembership in subversive organizations, do not constitute justification for their eviction. The judgment in each case is reversed.

*Judgments reversed.*