PATROSSO, J.
 

 This case and three companion cases [Civ. A. Nos. 8551, 8552 and 8553] present the same questions, and this opinion is equally applicable to each.
 

 The complaint is in the usual form of an action in unlawful detainer, alleging that defendants are the tenants of a unit in a housing development operated by the plaintiff under a month to month tenancy evidenced by a written agreement providing that it may be terminated by either party upon 10 days’ written notice to the other; and that plaintiff elected to so terminate defendants’ tenancy by giving the requisite notice, but that defendants have refused to surrender possession thereof and unlawfully continue to occupy the same. Defendants answered, admitting generally the allegations of the complaint except that they denied that their tenancy had been lawfully terminated, and alleging that such purported termination was unlawful and unauthorized in that the only reason therefor was defendants’ refusal to sign a certificate that they were not members of any one of a list of numerous organizations described as those “designated by the Attorney General of the United States as within Executive Order No. 10450 (18 F.R. 2489),” and that eviction from the premises for the reason stated was in violation of their constitutional rights. Plaintiff thereupon moved the court for summary judgment upon the ground that' the facts alleged did not constitute a defense. The motion was granted, and defendants appeal from the resulting judgment.
 

 In support of the judgment plaintiff contends that the reason for its action in terminating defendants’ tenancy is •immaterial, the argument being that it, like a private proprietor, may terminate a monthly tenancy by giving the requisite notice with or without cause, and that the reason underlying its action in so doing may not be inquired into in a proceeding seeking to recover possession of the premises
 
 *885
 
 following such termination. Defendants reply that plaintiff, as a public body, does not occupy the same status as a private proprietor, and that it may not terminate their tenancy if its action in so doing is arbitrary or in violation of their constitutional rights, as they allege to be the situation here. Plaintiff replies that, assuming its action in terminating defendants’ tenancy was for the reason stated, it is not arbitrary nor is it violative of any of defendants’ constitutional rights.
 

 In the present posture of the case, it must be taken as true that the sole and only reason for the termination of defendants’ tenancy is the fact that they refused to execute the certificate previously referred to; and hence the question presented is whether, if this fact be established upon the trial, such proof would have constituted a good defense to thé action.
 

 Plaintiff’s argument that it may terminate the tenancy of those occupying its public housing projects with or without reason may readily be disposed of. We believe it fairly obvious that a public body, a housing authority as here, does not possess the same freedom of action as a private landlord, who is at liberty to select his tenants as he pleases, and in the absence of a letting for a prescribed term, may terminate their tenancy either without any reason or for any reason regardless how arbitrary or unreasonable it may be. Thus he may refuse either to rent to or permit the continued occupancy of his premises by persons of a particular race or religion or political affiliation. A housing authority, however, has no such freedom of action. (See
 
 Banks
 
 v.
 
 Housing Authority
 
 (1953), 120 Cal.App.2d 1, 8 et seq. [260 P.2d 668].) And if it may not discriminate arbitrarily between persons and classes in leasing its premises, we see no reason why like considerations do not preclude arbitrary discrimination as between existing tenants in their right to continue such occupancy. (See
 
 Chicago Housing Authority
 
 v.
 
 Blackman
 
 (1954), 4 Ill.2d 319 [122 N.E.2d 522].)
 

 We pass, therefore, to the vital question as to whether plaintiff’s action in undertaking to terminate defendants’ right to continue the occupancy of the premises for the sole reason that they refused to execute the certificate previously referred to, may legally be sustained.
 

 While the arguments of counsel upon this question take a wide range, we find it unnecessary to notice all of them in
 
 *886
 
 detail, although each has received careful consideration. In essence, plaintiff’s argument is this: The right to occupy low-rent housing units is in the nature of a bounty which the state is not required to extend to those of its citizens who are disloyal or are engaged in activities designed to destroy our form of government by force or violence or other unconstitutional means. It is to be noted, however, that, if the facts alleged in defendants’ answer be taken as true (as they must for present purposes), the defendants are not being evicted because they are in fact disloyal or engaged directly or indirectly in advocating the overthrow of our government by unconstitutional means, but only because they refuse to sign a certificate that they are not members of certain organizations. Implicit in plaintiff’s argument, therefore, is the assertion that failure or refusal of defendants to disavow membership in any of said organizations is in itself proof that they are disloyal or subversive. Upon this premise plaintiff argues that the case here is comparable to those in which it has been held that a public employee may be required, as a condition to his right to retain public employment, to take an oath that he had not advised, advocated, or taught, and is not a member in any organization which teaches or advocates the overthrow of our form of government by force or violence or other unlawful means.
 
 (Garner
 
 v.
 
 Board of Public Works of Los Angeles
 
 (1952), 341 U.S. 716 [71 S.Ct. 909, 95 L.Ed. 1317].) Without undertaking to so decide, we may concede, for the purposes of this discussion, that if defendants were being evicted because of their refusal to take an oath similar to that involved in the Garner case, they could not successfully challenge the action of the plaintiff. In such circumstances, it might reasonably be inferred that a refusal to take such oath constituted an admission that they in fact advocated the overthrow of our form of government by unlawful means. As indicated, however, this is not the situation here—rather the question is whether they may be evicted from public housing premises for their failure or refusal to sign a statement that they are not members of any one of a large number of organizations designated by the Attorney General “as within Executive Order 10450” (18 F.R. 2489, 5 U.S.C.A. §631, note), namely: “Totalitarian, Fascist, Communist or subversive” or which advocates or approves “the commission of acts of force or violence to deny other persons their rights under the Constitution of the
 
 *887
 
 United States, or which seeks to alter the form of government of the United States by unconstitutional means.”
 
 [1]
 

 Fully mindful of the grave threats which the activities of subversives present to our form of government, and while reluctant to strike down any governmental action designed to frustrate their purpose and the accomplishment of their objectives, we are not at liberty to disregard settled rules of law and the limitations inherent in our constitutional form of government, observance of which in our view compels a reversal of the judgment for the following reasons:
 

 1. If it be assumed, as plaintiff’s argument suggests, that subversives may constitutionally be denied the right to enjoy public housing facilities, neither the Executive Order nor the Hatch Act (5 U.S.C.A. § 118j(l))
 
 [2]
 
 undertakes to proscribe membership in
 
 all
 
 of the organizations designated by the Attorney General. Nor does the Executive Order declare that proof of membership in any of the organizations designated by the Attorney General shall in and of itself operate to establish that one is a subversive. (See
 
 Kutcher
 
 v.
 
 Gray
 
 (C.C.A.D.C. 1952), 199 F.2d 783, 787-788.) In speaking of the effect of the Executive Order as related to a government employee’s membership in an organization included in the Attorney General’s list, Mr. Justice Reed, upon behalf of the minority in
 
 Joint
 
 Anti-Fascist
 
 Refugee Com.
 
 v.
 
 McGrath
 
 (1951), 341 U.S. 123 [71 S.Ct. 624, 95 L.Ed. 817], points out that the “listing” of an organization has no “finality in determining the loyalty of members” thereof (95 L.Ed. 871), and further that “The employee’s association with a listed organization does not, under the Order, establish, even
 
 prima facie,
 
 reasonable grounds for belief in the employee’s disloyalty.” (95 L.Ed. 864.) See also discussion in
 
 Peters
 
 v.
 
 New York City Housing Authority
 
 (1953), 128 N.Y.S.2d 224, 240-241, reversed' upon other grounds, 307 NY. 519
 
 *888
 
 [121 N.E.2d 529]. If this be true in the delicate field of public employment, it is doubly so where a state agency undertakes to discriminate against members of any such organization solely upon the basis of membership therein. As said in
 
 Peters
 
 v.
 
 New York Housing Authority, supra
 
 (p. 236 [128 N.Y.S.2d]): “Obviously the government is under no duty to provide bounties in the form of low rent housing accommodations for its citizens. If it elects to do so, however, it cannot arbitrarily prevent any of its citizens from enjoying these statutorily created privileges. Nor can it make the privilege of their continuance dependent upon conditions that would deprive any of its citizens of their constitutional rights. A government is without power to impose an unconstitutional requirement as a condition for granting a privilege, even though the privilege may have been the use of government property.
 
 Frost
 
 v.
 
 Railroad Com. of Calif.,
 
 271 U.S. 583 [46 S.Ct. 605, 70 L.Ed. 1101].” ‘1 [N] or shall any citizen, or class of citizens, be granted privileges or immunities which, upon the same terms, shall not be granted to all citizens.” (Cal. Const., art. I, §21.)
 

 2. We are also in agreement with the conclusion expressed by the Supreme Court of Illinois in
 
 Chicago Housing Authority
 
 v.
 
 Blackman, supra,
 
 122 N.E.2d 522, that the plaintiff Housing Authority is without authority to exact the signing of the nonmembership certificate as a condition to the right to occupy its premises. The court there says (p. 526 [122 N.E.2d]): “The purpose of the Illinois Housing Authorities Act is to eradicate slums and provide housing for persons of low-income class. (See
 
 Krause
 
 v.
 
 Peoria Housing Authority,
 
 370 Ill. 356, 373 [19 N.E.2d 193].) It is evident that the exclusion of otherwise qualified persons solely because of membership in organizations designated as subversive by the Attorney General has no tendency whatever to further such purpose. In
 
 Krause
 
 v.
 
 Peoria Housing Authority,
 
 we held that arbitrary discretion in the choice of tenants was not conferred on the local housing authority, since reasonable standards to guide the exercise of discretion are provided by section 25 of the act. A construction of section 27 which would enable the housing authority to prescribe conditions of eligibility having no rational connection with the purpose of the act would raise serious constitutional questions. It is a well-established rule that statutes will be construed, if possible, so as to avoid invalidity. We conclude that appellee exceeded its statutory authority in re
 
 *889
 
 qniring appellant Clark to execute the certificate of non-membership in subversive organizations.”
 

 It may be noted that section 25 of the Illinois Act, except for the requirement of the statutory oath (there held invalid) is substantially identical with our Health and Safety Code, sections 34322 and 34323, and section 27 is substantially the same as Health and Safety Code, section 34327.
 

 In addition to what was said by the Supreme Court of Illinois, we fail to find in the act, pursuant to which the plain tiff Housing Authority was created, anything to suggest that it is authorized to use the powers conferred upon it to punish subversives or discourage persons from entertaining subversive ideas by denying to such the right of occupying its facilities. Nor is it apparent that the laudable purpose of combating the efforts of subversives is advanced by compelling them to live in slums or substandard housing accommodations.
 

 As indicated at the inception of this discussion, we have necessarily been compelled to assume the truth of the facts alleged in the defendants’ answer for the purpose of determining whether it stated a defense to the action. This because the facts set forth in the affidavits filed upon behalf of the defendants in opposition to plaintiff’s motion for summary judgment are in accordance with and support the allegations in the answer. It may, of course, well be that upon the trial the evidence will disclose that the failure of defendants to sign the nonmembership certificate was not the sole reason for their eviction, in which event the defendants will have failed to establish their pleaded defense.
 

 The judgment is reversed and the cause remanded for trial upon the issues tendered by the pleadings.
 

 Shaw, P. J., and Bishop, J., concurred.
 

 [1]
 

 Originally the Attorney General in compiling his list had broken it down into six categories, only one of which was entitled “subversive” and only about 13 organizations had been so designated up to April 29, 1953, after which the current list was promulgated, in whieh the organizations named therein are not separately classified but they are described only as being organizations “within Executive Order No. 10450.” (See
 
 Peters
 
 v.
 
 New York City Housing Authority
 
 (1954), 307 N.Y. 519 [121 N.E.2d 529, 532-533].)
 

 [2]
 

 “It shall be unlawful for any person employed in any capacity by any agency of the Federal Government, where compensation, or any part thereof, is paid from funds authorized or appropriated by any Act of Congress, to have membership in any political party or organization which advocates the overthrow of our constitutional form of government in the United States.”