[S. F. No. 21831. In Bank. Dec. 20, 1966.]

NELLIE BAGLEY, Plaintiff and Appellant, v. WASHINGTON TOWNSHIP HOSPITAL DISTRICT et al., Defendants and Respondents.

---

*Retired Associate Justice of the Supreme Court sitting under assignment by the Chairman of the Judicial Council.

500

Levy, DeRoy, Geffner & Van Bourg, Victor J. Van Bourg, Stewart Weinberg, Davis & Cowell and Robert P. Cowell for Plaintiff and Appellant.

Marshall W. Krause, Albert M. Bendich and Arthur Wells, Jr., as Amici Curiae on behalf of Plaintiff and Appellant.

Sabraw & Avera and Fred E. Avera for Defendants and Respondents.

TOBRINER, J.—In the present case we consider once again the constitutionality of restraints imposed upon the political activities of a public employee. We once again review the factors which circumscribe the power of the government to exact as a condition of public employment a waiver of constitutional rights.

We have recently held that only a "compelling" public interest can justify the imposition of restraints upon the political activities of public employees and that, "It must appear that the restrictions . . . are not broader than are required to preserve the efficiency and integrity of the public service." (*Fort* v. *Civil Service Com.* (1964) 61 Cal.2d 331, 337-338 [38 Cal.Rptr. 625, 392 P.2d 385].) ▇▇ Similarly, in the present case, we hold that a governmental agency which would require a waiver of constitutional rights as a condition of public employment must demonstrate: (1) that the political restraints rationally relate to the enhancement of the public service, (2) that the benefits which the public gains by the restraints out-

weigh the resulting impairment of constitutional rights, and (3) that no alternatives less subversive of constitutional rights are available.

According to defendants, the particular restraints involved here may be sustained because they do no more than prohibit the public employee from campaigning against his own superior, an inhibition which has been upheld in *Fort*. We shall explain, however, that these restraints cover a far wider field of political participation than the campaign against one's superior. To the extent that the restraints operate beyond the sphere of the proffered justification they advance no compelling public interest and exact the waiver of constitutional rights without compensating public benefit. Such restraints cannot stand; a dismissal predicated upon them must be reversed.

In April 1960 the defendant hospital district hired plaintiff as a nurse's aide. In this capacity plaintiff performed such tasks as bathing patients, changing beds, and taking temperatures. The record shows that plaintiff consistently performed her assigned duties to the complete satisfaction of her superiors.

Late in 1963 a number of citizens became dissatisfied with the policies of the defendant district and commenced a campaign to recall from office certain of its directors. Plaintiff participated in the activities of this group by attending some of its meetings, circulating recall petitions and distributing literature. The record indicates that plaintiff confined her activities on behalf of the recall campaign to her off-duty hours and that in seeking to influence interested citizens to vote for the recall she did not advise them of her employment by the district.

On February 7, 1964, the hospital administrator issued to all hospital personnel a memorandum entitled "Political Activities of Public Employees." The memorandum stated: "Notice is hereby given that the Board of Directors of the Washington Township Hospital District [has] instructed the Administrator to place all employees on notice that employee participation in any political activity for or against any candidate or ballot measure pertaining to the . . . District is unlawful and will not be acceptable conduct for an employee of this hospital and shall constitute grounds for disciplinary action and/or dismissal." The memorandum proceeded to state that the employees were "further advised" of certain sections of the Government Code relating to the polit-

ical activities of public employees. The memorandum quoted in full the language of Government Code section 3205 which provides: "No officer or employee whose position is not exempt from the operation of a civil service personnel or merit system of a local agency shall take an active part in any campaign for or against any candidate, except himself, for an office of such local agency, or for or against any ballot measure relating to the recall of any elected official of the local agency."

Plaintiff thereupon sought to enjoin the district from representing to its employees that participation in the recall campaign was unlawful and from threatening or instituting reprisals against any employee for participating in that campaign.

While plaintiff's suit for an injunction was pending, the assistant hospital administrator called plaintiff into his office and demanded her assurance that she had withdrawn from participation in the recall movement and that she intended "to obey the letter and spirit of the directive of the Board of Directors." He also stated that plaintiff's failure to give such assurance would result in her prompt dismissal "on the ground that active participation in recall activities by any employee while remaining an employee of the hospital district causes a disruption of employee relations by creating dissension and unrest among employees, which in turn disrupts and impairs the service to the patient and the public." Plaintiff indicated that she intended to continue her participation in the recall movement. Her employment was thereupon terminated. Plaintiff has since amended her complaint to seek reinstatement, back wages and punitive damages.

In urging us to affirm the action of the trial court in sustaining a demurrer to plaintiff's complaint, defendant district notes that it maintains no civil service or merit system for its employees and that section 32121, subdivision (h), of the Health and Safety Code declares that employees of local hospital districts hold their positions "at the pleasure" of the hospital board. Since no provision of constitutional or statutory law purports to give plaintiff a right to secure or retain employment by the board, defendant urges that its right to terminate her employment knows no legal limit.

Despite the antiquity of this argument, its reasoning today stands utterly discredited. ▄▄▄ Although an individual can claim no constitutional right to obtain public employment or to receive any other publicly conferred benefit, the government

cannot condition admission to such employment or receipt of such benefits upon any terms that it may choose to impose. As Professor Thomas Reed Powell long ago observed, "Logically a thing which may be absolutely excluded is not the same as a thing which may be subjected to burdens of a different kind, even though such burdens would be regarded by all as less onerous than the burden of absolute exclusion. The 'power of absolute exclusion' is a term not identical with the 'power of relative exclusion' or the 'power to impose any burdens whatsoever.' " (Powell, *The Right to Work for the State* (1916) 16 Colum.L.Rev. 99, 111.)[1] Today courts and commentators alike recognize without question that the power of government, federal or state, to withhold benefits from its citizens does not encompass a supposed "lesser" power to grant such benefits upon an arbitrary deprivation of constitutional right.[2]

The faulty logic inherent in defendant's proffered syllogism was rejected by this court in *Danskin* v. *San Diego Unified School Dist.* (1946) 28 Cal.2d 536 [171 P.2d 885]. That case involved a school district which had undertaken to confine the use of its buildings to organizations whose members gave a satisfactory account of their views. In the course of that opinion we declared: "The state is under no duty to make school buildings available for public meetings [citations]. If it elects to do so, however, it cannot arbitrarily prevent any members of the public from holding such meetings. [Citations.] Nor can it make the privilege of holding them dependent on conditions that would deprive any members of the pub-

---

[1]See also Comment, *Unconstitutional Conditions: an Analysis* (1961) 50 Geo.L.J. 234, 236-239; O'Neil, *Unconstitutional Conditions: Welfare Benefits with Strings Attached* (1966) 54 Cal.L.Rev. 443, 460-462.

[2]*Sherbert* v. *Verner* (1962) 374 U.S. 398, 404-406 [10 L.Ed.2d 965, 83 S.Ct. 1790]; *Speiser* v. *Randall* (1958) 357 U.S. 513, 518-519 [2 L.Ed.2d 1460, 78 S.Ct. 1332]; *Hannegan* v. *Esquire, Inc.* (1946) 327 U.S. 146, 156 [90 L.Ed. 586, 66 S.Ct. 456]; *Missouri* ex rel. *Gaines* v. *Canada* (1938) 305 U.S. 337, 349 [83 L.Ed. 208, 59 S.Ct. 232]; *United States* ex rel. *Milwaukee etc. Pub. Co.* v. *Burleson* (1921) 255 U.S. 407, 430-431 [65 L.Ed. 704, 41 S.Ct. 352] (dissent of Brandeis, J.); *Steinberg* v. *United States* (1958) 163 F.Supp. 590, 592 [143 Ct.Cl. 1]; *Fort* v. *Civil Service Com., supra,* 61 Cal.2d 331, 334; *Housing Authority* v. *Cordova* (1955) 130 Cal.App.2d Supp. 883, 884-886 [279 P.2d 215]; *Lawson* v. *Housing Authority* (1955) 270 Wis. 269, 275-278 [70 N.W.2d 605]; O'Neil, *Unconstitutional Conditions: Welfare Benefits with Strings Attached, supra,* 54 Cal.L.Rev. 443, 456-460; Linde, *Constitutional Rights in the Public Sector* (1965) 40 Wash.L.Rev. 10; Note, *Unconstitutional Conditions* (1960) 73 Harv.L.Rev. 1595; Willcox, *Invasions of the First Amendment Through Conditioned Public Spending* (1955) 41 Cornell L.Q. 12; Hale, *Unconstitutional Conditions and Constitutional Rights* (1935) 35 Colum.L.Rev. 321.

lic of their constitutional rights. A state is without power to impose an unconstitutional requirement as a condition for granting a privilege even though the privilege is the use of state property [citations]. . . . It is true that the state need not open the doors of a school building as a forum and may at any time choose to close them. Once it opens the doors, however, it cannot demand tickets of admission in the form of convictions and affiliations that it deems acceptable.'' (*Danskin* v. *San Diego Unified School Dist.*, *supra*, 28 Cal.2d at pp. 545-547.)

Similarly, in *Syrek* v. *California Unemployment Ins. Appeals Board* (1960) 54 Cal.2d 519, 532 [7 Cal.Rptr. 97, 354 P.2d 625], this court stated that, ''[A]lthough the state need not legally have provided unemployment benefits for anyone, once it has done so it cannot withhold them from one who has good cause for declining a proffered employment.''

On the other hand, we cannot accept the apparent suggestion of some few cases that government may *never* condition the receipt of benefits or privileges upon the non-assertion of constitutional rights. (See, e.g., *Frost* v. *Railroad Com.* (1926) 271 U.S. 583, 593-594 [70 L.Ed. 1101, 46 S.Ct. 605, 47 A.L.R. 457]; *Terral* v. *Burke Constr. Co.* (1922) 257 U.S. 529, 532-533 [66 L.Ed. 352, 42 S.Ct. 188, 21 A.L.R. 186].) The government employee should no more enjoy the right to wrap himself in the flag of constitutional protection against every condition of employment imposed by the government than the government should enjoy an absolute right to strip him of every constitutional protection. ▉ Just as we have rejected the fallacious argument that the power of government to impose such conditions knows no limits, so must we acknowledge that government may, when circumstances inexorably so require, impose conditions upon the enjoyment of publicly conferred benefits despite a resulting qualification of constitutional rights.[3]

In doing so, however, government bears a heavy burden of demonstrating the practical necessity for the limitation. At the very least it must establish that the imposed conditions relate to the purposes of the legislation which confers the benefit or

---

[3] ''[F]ew if any forms of government benefit are so essential or of such a high order that they cannot constitutionally be conditioned in any way.'' (O'Neil, *Unconstitutional Conditions: Welfare Benefits with Strings Attached*, *supra*, 54 Cal.L.Rev. 443, 445.)

privilege.[4] In the words of Mr. Justice Frankfurter, "Congress may withhold all sorts of facilities for a better life, but if it affords them, it cannot make them available in an obviously arbitrary way or exact surrender of freedoms unrelated to the purpose of the facilities." (*American Communications Assn.* v. *Douds* (1950) 339 U.S. 382, 417 [94 L.Ed. 925, 70 S.Ct. 674], Frankfurter, J., concurring and dissenting.)[5] Thus in *Housing Authority* v. *Cordova, supra,* 130 Cal.App.2d Supp. 884, 889, the court denied the power of the City of Los Angeles to exclude from public housing persons who decline to sign certificates of nonmembership in subversive groups, noting its doubts that "the laudable purpose of combating the efforts of subversives is advanced by compelling them to live in slums or substandard housing accommodations."[6]

■ Not only must the conditions annexed to the enjoyment of a publicly conferred benefit reasonably tend to further the purposes sought by conferment of that benefit but also the utility of imposing the conditions must manifestly outweigh any resulting impairment of constitutional rights.[7] ■ Fur-

[4]Alternatively, perhaps, the state might meet the test of relevance by demonstrating that enjoyment of the benefit by the class which the condition excludes would affirmatively harm compelling public interests. In the *Danskin* case, for example, we stated: "One must inquire why the measure in question seeks to prohibit 'subversive elements' from holding meetings in a school building when presumably they can hold them elsewhere without arousing fears of baneful consequences. Is it reasonable to suppose that meetings that would be harmless elsewhere would take on a sinister quality in a school building?" (*Danskin* v. *San Diego Unified School Dist., supra,* 28 Cal.2d 536, 545; see also, Note, *Unconstitutional Conditions, supra,* 73 Harv.L.Rev. 1595, 1600; O'Neil, *Unconstitutional Conditions: Welfare Benefits with Strings Attached, supra,* 54 Cal.L.Rev. 443, 467-468.)

[5]See also *Bates* v. *Little Rock* (1960) 361 U.S. 516, 525 [4 L.Ed.2d 480, 80 S.Ct. 412]; *Schware* v. *Bar Examiners* (1957) 353 U.S. 232, 239 [1 L.Ed.2d 796, 77 S.Ct. 752, 64 A.L.R.2d 288]; *Syrek* v. *California Unemployment Ins. Appeals Board, supra,* 54 Cal.2d 519, 529-530; Note, *Unconstitutional Conditions, supra,* 73 Harv.L.Rev. 1595, 1600; *Willcox, Invasions of the First Amendment Through Conditioned Public Spending, supra,* 41 Cornell L.Q. 12; cf. *McLaughlin* v. *Florida* (1964) 379 U.S. 184, 190-191 [13 L.Ed.2d 222, 85 S.Ct. 283]; *Morey* v. *Doud* (1957) 354 U.S. 457, 465 [1 L.Ed.2d 1485, 77 S.Ct. 1344]; *Toomer* v. *Witsell* (1948) 334 U.S. 385, 403 [92 L.Ed. 1460, 68 S.Ct. 1157]; *Smith* v. *Cahoon* (1931) 283 U.S. 553, 566-567 [75 L.Ed. 1264, 51 S.Ct. 582].

[6]See also *Chicago Housing Authority* v. *Blackman* (1954) 4 Ill.2d 319, 326 [122 N.E.2d 522]; *Lawson* v. *Housing Authority, supra,* 270 Wis. 269, 284.

[7]*Sherbert* v. *Verner, supra,* 374 U.S. 398, 406-409; *Bates* v. *Little Rock, supra,* 361 U.S. 516. 514; *NAACP* v. *Alabama* (1958) 357 U.S. 449, 463-466 [2 L.Ed.2d 1488, 78 S.Ct. 1163]; *American Communications Assn.* v. *Douds, supra,* 339 U.S. 382, 405; *Garner* v. *Board of Public Works* (1951) 341 U.S. 716, 720-721 [95 L.Ed. 1317, 71 S.Ct. 909];

ther, in imposing conditions upon the enjoyment of publicly conferred benefits, as in the restriction of constitutional rights by more direct means, the state must establish the unavailability of less offensive alternatives and demonstrate that the conditions are drawn with narrow specificity, restricting the exercise of constitutional rights only to the extent necessary to maintain the integrity of the program which confers the benefits.[8]

The public employee surely enjoys the status of a person protected by constitutional right. Public employment does not deprive him of constitutional protection. In the absence of an imperative necessity to protect the public from irresponsible activity of so serious a nature that it would disrupt the public welfare, such protections are not subject to destruction by a public employer's insistence that they be waived by contract.

We recognized and applied these principles in our recent decision in *Fort* v. *Civil Service Com., supra,* 61 Cal.2d 331, holding that only "compelling" public interests can justify a governmental entity in demanding a waiver of constitutional rights as a condition of public employment. "Although . . . one employed in public service does not have a constitutional right to such employment [citation] it is settled that a person cannot properly be barred or removed from public employment arbitrarily or in disregard of his constitutional rights." (61 Cal.2d 331, 334.)[9] We further noted in *Fort,* "The principles

---

*Shelton* v. *Tucker* (1960) 364 U.S. 479, 490 [5 L.Ed.2d 231, 81 S.Ct. 247]; cf. *Stevens* v. *Marks* (1966) 383 U.S. 234, 243-244 [15 L.Ed.2d 724, 86 S.Ct. 788]; *Marsh* v. *Alabama* (1946) 326 U.S. 501, 509 [90 L.Ed. 265, 66 S.Ct. 276]; *People* v. *Woody* (1964) 61 Cal.2d 716, 727 [40 Cal.Rptr. 69, 394 P.2d 813]; Comment, *Unconstitutional Conditions: An Analysis, supra,* 50 Geo.L.J. 234, 247-248.

[8]*Sherbert* v. *Verner, supra,* 374 U.S. 398, 407; *NAACP* v. *Button* (1963) 371 U.S. 415, 432-433 [9 L.Ed.2d 405, 83 S.Ct. 328]; *Braunfeld* v. *Brown* (1961) 366 U.S. 599, 607 [6 L.Ed.2d 563, 81 S.Ct. 1144]; *Shelton* v. *Tucker, supra,* 364 U.S. 479, 487-490; *Dean Milk Co.* v. *Madison* (1951) 340 U.S. 349, 354 [95 L.Ed. 329, 71 S.Ct. 295]; *Cantwell* v. *Connecticut* (1940) 310 U.S. 296, 304, 311 [84 L.Ed. 1213, 60 S.Ct. 900, 128 A.L.R. 1352]; *Canon* v. *Justice Court* (1964) 61 Cal.2d 446, 459 [39 Cal.Rptr. 228, 393 P.2d 428]; *Wollam* v. *City of Palm Springs* (1963) 59 Cal.2d 276, 286-288 [29 Cal.Rptr. 1, 379 P.2d 481]; O'Neil, *Unconstitutional Conditions: Welfare Benefits with Strings Attached, supra,* 54 Cal.L.Rev. 443, 469-470.

[9]See also *Cramp* v. *Board of Public Instruction* (1961) 368 U.S. 278, 288 [7 L.Ed.2d 285, 82 S.Ct. 275]; *Torcaso* v. *Watkins* (1961) 367 U.S. 488, 495-496 [6 L.Ed.2d 982, 81 S.Ct. 1680]; *Slochower* v. *Board of Higher Education* (1956) 350 U.S. 551, 555 [100 L.Ed. 692, 76 S.Ct. 637]; *Wieman* v. *Updegraff* (1952) 344 U.S. 183, 191-192 [97 L.Ed. 216, 73 S.Ct. 215].

set forth in the recent decisions do not admit of wholesale restrictions on political activities merely because the persons affected are public employees, particularly when it is considered that there are millions of such persons. It must appear that restrictions imposed by a governmental entity are *not broader than are required to preserve the efficiency and integrity of its public service.*" (61 Cal.2d at pp. 337-338 (italics added) ; see also *Kinnear* v. *City & County of San Francisco* (1964) 61 Cal.2d 341, 343 [38 Cal.Rptr. 631, 392 P.2d 391].)

The restrictions imposed upon plaintiff's political activities by Government Code section 3205 and the board's directive are not, as *Fort* insists that they must be, "required to preserve the efficiency and integrity of [the] public service." The sweeping prohibitions of the statute and the directive are not necessary to the successful functioning of the civil service system. Indeed, the defendant district has not even attempted to demonstrate that such political restrictions even relate to the general purposes of the civil service legislation.

The single ground upon which the defendant would sustain these restrictions is that it may constitutionally prohibit a public employee from running or campaigning against his own superior officer. Defendant rests upon the declaration in *Fort* that "A strong case, we think, can . . . be made for the view that permitting a public employee to run or campaign against his own superior has so disruptive an effect on the public service as to warrant restriction. It is of course possible to draw a restrictive provision narrowly in order to deal specifically with such abuses." (61 Cal.2d 331, 338.) Since the instant limitations were not narrowly drawn to deal with this specific abuse, however, they cannot rest upon this circumscribed ground.

We have recognized that administrative disruption may ensue from the participation of a public employee in a campaign for or against his own superior and that the state may meet such danger by specific restriction. Here, however, we do not reach that question ; we need not determine whether the working relationship between plaintiff and the board was so immediate that the board might be considered her "own superior." We shall point out that the present restrictions attempt too wide a prohibition. ▉ "Where the statute is attacked on First Amendment grounds the court is not limited in its examination to the application of the statute involved in the par-

ticular case, but may consider other possible applications of the statute.'' (*Canon* v. *Justice Court, supra,* 61 Cal.2d 446, 450; see also *Fort* v. *Civil Service Com., supra,* 61 Cal.2d 331, 338-340; *NAACP* v. *Button, supra,* 371 U.S. 415, 432-433; *Talley* v. *California* (1960) 362 U.S. 60, 63-64 [4 L.Ed.2d 559, 80 S.Ct. 536]; *Thornhill* v. *Alabama* (1940) 310 U.S. 88, 96-99 [84 L.Ed. 1093, 60 S.Ct. 736]; Note, *Inseparability in Application of Statutes Impairing Civil Liberties* (1948) 61 Harv. L.Rev. 1208.) Accordingly, we need not determine whether the conduct of plaintiff disclosed by the present record so closely imperiled compelling public interests as to be properly subject to regulation by a more narrowly drawn statute.

 Both Government Code section 3205 and the board's directive would prohibit conduct that does not fall within the statement in *Fort* that the state may constitutionally restrict the freedom of a public employee to run or campaign against ''his own superior.''

The directive proscribes participation in ''any political activity for or against any candidate or ballot measure pertaining to the district.'' By extending its ban to ''any ballot measure pertaining to the district'' the directive embraces matters other than campaigns against an employee's ''own superior.'' Indeed, in its present form, the directive, like the restriction struck down in *Fort,* would include ''even . . . measures which would directly and personally affect the employee such as one relating to his own salary or working conditions.'' (61 Cal.2d 331, 335.)

The overbreadth of the statute lies in the wide swath of its prohibition of employee participation in a number and variety of elections. Subject to an exception for persons ''exempt'' from civil service, the statute provides that no employee of a ''local agency'' may participate in ''any campaign for or against any candidate, except himself, for an office of such local agency.'' Since Government Code section 3201 defines ''local agency'' as ''a county, city, city and county, political subdivision, district or municipal corporation,'' the ban of section 3205 would, for example, prevent an employee of a city from participating in the campaign of any officer of his city, and perhaps even his county, however remote might be the working relationship between such employee and such officer. So broad a rule cannot find justification in our dictum that a public employee may constitutionally be prevented from opposing the reelection of ''his own superior.''

■ We turn, finally, to the suggestion that the statute does not apply to a public employee, such as plaintiff, who does not enjoy the benefit of a civil service or merit system. The statutory ban here expressly extends only to public employees who are "not exempt from the operation of a civil service personnel or merit system." Accordingly, the argument runs, the employees of a government agency which, like the present defendant, has instituted no civil service or merit system for its employees are thereby rendered "exempt from" the operation of such a system within the meaning of the statute.

If there were no other guide to the meaning of this phrase, we might well conclude that the statutory ban applies only to persons who enjoy the protection of a civil service or merit system and that the Legislature intended to preserve intact the political freedom of all other public employees as a surrogate for the job security which they lack. We note, however, that article XXIV, section 4, of our Constitution sets forth an extensive list of "Offices and Employments Exempt From Civil Service." For the most part, these positions are elective or high appointive offices whose holders could not reasonably be expected to refrain from political activities without profoundly affecting the workings of our representative institutions. Since the Constitution has made explicit by definition the officers who are "exempt from civil service," we cannot at will vastly expand that category.

The purpose of the Legislature in confining the ban of Government Code section 3205 to persons "not exempt from" a civil service or merit system was to exclude only persons affirmatively exempted from the operation of such a system by its own terms or by the terms of statutory or constitutional law. Thus the failure of the defendant district to institute a civil service or merit system for its employees does not excuse them from compliance with Government Code section 3205, if that provision were otherwise valid.

In summary we note that the expansion of government enterprise with its ever-increasing number of employees marks this area of the law a crucial one. As the number of persons employed by government and governmentally assisted institutions continues to grow, the necessity of preserving for them the maximum practicable right to participate in the political life of the republic grows with it. Restrictions on public employees which, in some or all of their applications, advance no compelling public interest commensurate with the waiver of

constitutional rights which they require imperil the continued operation of our institutions of representative government.

This court has recognized the right of governmental agencies to preserve their harmonious operation by restricting such political activities as directly threaten administrative disruption or a loss of integrity. When, however, the sweep of the restrictions imposed extends beyond the area of permissible limitation, we are obliged to strike down such strictures and any official act predicated upon them.

We reverse the judgment of dismissal entered by the trial court pursuant to its order sustaining defendants' demurrer and remand the cause for further proceedings consistent with this opinion.

Traynor, C. J., Peters, J., Mosk, J., and Peek, J.,* concurred.

BURKE, J.—I dissent. When this court declared invalid on the grounds of overbreadth and vagueness the Alameda County charter provision (§ 41) which was involved in *Fort* (*Fort* v. *Civil Service Com.* (1964) 61 Cal.2d 331 [38 Cal. Rptr. 625, 392 P.2d 385]), we tacitly approved the Government Code provisions (including § 3205) which the majority opinion would now declare to be unconstitutional. The opinion in *Fort* explicitly specifies (p. 340) that "It should be noted that this is not an area in which invalidation of a [county charter] provision will eliminate the only legislation governing an important subject since the Legislature in 1963 enacted provisions applicable to Alameda County which relate to political activities by local public employees," citing Government Code sections 3201-3205, found in Statutes 1963, chapter 2000, pages 4078-4080. *Fort* further points out (fn. 5 on p. 340 of 61 Cal.2d) that "The 1963 legislation applies uniformly to all officers and employees of a 'local agency,' including charter as well as noncharter counties and cities, *and it restricts political activities in a much narrower manner* than does section 41 of the charter." (Italics added.)

A mere reading of the 1963 legislation demonstrates the correctness of the statement just quoted. Section 3201 sets forth definitions. Section 3202 prohibits the knowing solicitation or receiving by an officer or employee of a local agency, from

other officers or employees thereof or from those on its employment lists, of political funds or contributions. Section 3203 forbids local agency officers and employees from permitting the use of agency property (with certain exceptions) for the purpose of making or giving notice of any political assessment, subscription or contribution.[1] Section 3204 forbids one holding or seeking office or employment in a local agency from using or purporting to use the authority or influence thereof to bestow agency employment, promotion, etc., in return for political influence "or upon any other corrupt condition or consideration." Section 3204.5 prohibits a local agency officer or employee from participating "in political activities of any kind while he is in uniform." Section 3205 forbids an officer or employee of a local agency (except those holding the exempt positions) from taking active part in any campaign for or against any candidate, except himself, for an agency office, or for or against any ballot measure relating to the recall of any elected agency official.

Not only are the restrictions of these Government Code sections much narrower than those involved in *Fort*, but the conclusion appears inescapable that they "are not broader than are required to preserve the efficiency and integrity of" the public service—the standard which *Fort* approves. (P. 338 of 61 Cal.2d.) Moreover, I think it is well within the scope of legislative authority to conclude, as we must presume was done, that violation of the proscriptions of those sections would reasonably be calculated to impair the agency's public service. And with respect to the case at hand, active participation by a local agency officer or employee for or against a ballot measure to recall another elected agency official is at least as likely as not to demoralize, impair and disrupt the efficiency and integrity of service. Plaintiff's own complaint (first amended) rather cogently demonstrates this fact. She alleges that numerous employees of defendant district were members of the recall committee and that she was bringing action for their benefit as well as her own.[2] It thus appears that the recall movement involved at least in part a struggle

---

[1]Section 3206, added in 1965, relaxes the prohibitions of sections 3202 and 3203 with respect to ballot measures relating to working conditions of local agency officers and employees. (Stats. 1965, ch. 16, p. 889, § 1.)

[2]A further allegation of the complaint is that the terms and conditions of employment of various district employees, including plaintiff, are arrived at by negotiations between the district and three union locals. The union to which plaintiff belongs is alleged to be the Hospital and Institutional Workers Union, Local 250.

by the district employees to control policies which the law entrusts to the directors. How can it be thought that such internal strife among employees working shoulder to shoulder would fail to adversely affect the public service of this hospital district?

To attempt to draw lines of authority in an effort to determine whether an employee is campaigning for or against "his own superior" would only further embarrass and disrupt the service which the public expects and demands from local agencies, but with no corresponding benefit to the employee in the protection of any overriding constitutional rights.

Also, it seems to me that this court should not now, after tacitly approving the 1963 legislation in *Fort,* undertake a piecemeal invalidation thereof with no evaluation or discussion of what effect such emasculation will have upon the remaining sections of the law, or upon the public service, or the morale, discipline or efficiency of the thousands of employees engaged by the public agencies at all levels of government in this state. That legislation, as *Fort* notes, applies uniformly to all officers and employees of local agencies, and was obviously enacted in a conscientious effort to reasonably proscribe improper political activities bearing upon or connected with the agency itself and its public service. The regulations prescribed in the law appear reasonable and restrained, and I believe should be upheld.

I agree that section 3205 of the Government Code by its language does apply to plaintiff. That section covers each "officer or employee whose *position* is *not exempt from* the operation of a civil service personnel or merit *system of* a *local agency. . . .*" (Italics added.) The fact that a local agency, here defendant district, has not instituted a civil service or merit system would not standing alone render the positions of its employees "exempt from" the operation of such a system. Nor has any statutory or constitutional law been cited or discovered which would render the position of plaintiff exempt in advance from such a system if and when defendant district might adopt one. However, contrary to the majority opinion (*ante,* p. 510), I can perceive no analogy between Government Code section 3205 and Constitution article XXIV, section 4. That section of the Constitution deals only with officers and employees "of this State," and cannot serve as the basis for defining the officers or employees "of a local

514

agency'' who are exempt from civil service within the meaning of section 3205.

Although the reference in defendant district's 1964 directive to its employees to a ''ballot measure pertaining to the . . . District'' was apparently included in an effort to conform to the 1963 legislation on the political activities of local agency employees, we do not have before us a violation of that portion of the directive and so need not now determine its validity. Also, as noted hereinabove (fn. 1, *ante*), in 1965 the Legislature relaxed the political activity prohibitions with respect to certain ballot measures, and it must be presumed that the district will modify its approach accordingly.

I would affirm the judgment of dismissal.

McComb, J., concurred.