[Civ. No. 62750. Second Dist., Div. Two. Feb. 23, 1982.]

DELPHI LEE, JR., et al., Plaintiffs and Appellants, v.
CIVIL SERVICE COMMISSION OF LOS ANGELES COUNTY,
Defendant and Respondent.

COUNSEL

Jeffrey Paule and Geffner & Satzman for Plaintiffs and Appellants.

John H. Larson, County Counsel, and Halvor S. Melom, Deputy County Counsel, for Defendant and Respondent.

OPINION

**ROTH, P. J.**—Appellant Delphi Lee, Jr. (Lee) was a civil service worker, employed by the Los Angeles County Department of Public Social

Services (DPSS) as an administrative assistant. On January 20, 1975, Lee filed a declaration of candidacy to become a candidate for the Democratic nomination for the office of state senator in a special primary election to be held March 4 the same year. Prior to the filing of Lee's declaration his DPSS supervisor had advised him in writing that under the circumstances of his employment it might be illegal for him to run for office by virtue of those provisions of the United States Code popularly denominated the Hatch Act. (5 U.S.C. § 1501 et seq.) Lee, accordingly, was also requested to obtain an official opinion from the general counsel to the United States Civil Service Commission that such was not the case. The ultimate reason for the request was based upon the fact that, under the terms of the Hatch Act, a state or local agency, here the DPSS, may be faced with a withdrawal of federal funds otherwise flowing to it unless it discharges its employee determined to be in violation of that legislation.[1]

On January 23, 1975, Lee complied with this request and on February 5 following was advised his candidacy was in violation of the act. Nevertheless he continued in his race for office, participating unsuccessfully in the March primary, and was discharged from his DPSS employment February 7, 1977, following appropriate federal proceedings against him. (See fn. 1.)

The discharge decision was appealed to respondent Los Angeles Civil Service Commission (the County Commission) which, following a hearing on July 6, 1977, entered its final order sustaining his termination. Lee, on May 1, 1980, then filed his petition for writ of mandate pursuant to Code of Civil Procedure section 1094.5, alleging that the County

---

[1]The Hatch Act, which delimits the scope of permissible political activities by federal civil service employees, applies as well to state and local employees "whose principal employment is in connection with an activity which is financed in whole or in part by loans or grants made by the United States. (5 U.S.C. § 1501(4).) Such employees may not "be a candidate for elective office." (5 U.S.C. § 1502(3).)

When compliance with the act in this respect is in question, the federal commission is authorized to "(1) determine whether a violation ... has occurred; (2) determine whether the violation warrants the removal of the employee from his ... employment; and (3) notify the employee and the (state or local) agency of the determination ...." (5 U.S.C. § 1505.)

If notification is made that removal is warranted the state or local agency must discharge the employee within 30 days or the federal commission "shall make and certify to the appropriate Federal agency an order requiring that agency to withhold from its loans or grants to the State or local agency ... an amount equal to 2 years' pay at the rate the ... employee was receiving at the time of violation." (5 U.S.C. § 1506.)

Commission abused its discretion in so deciding.[2] That petition was denied by the trial court. This appeal followed.

■ The sole issue for our consideration, as formulated by Lee, is whether the County Commission's determination upholding the discharge "comports with the California Supreme Court's decision in *Bagley* v. *Washington Township Hospital Dist.* (1966) 65 Cal.2d 499 [55 Cal.Rptr. 401, 421 P.2d 409]."[3] We are of the view that it did and, accordingly, affirm the judgment appealed from.

In *Washington Township* Bagley, for some four years, had been employed by the hospital district as a nurse's aide. When a number of citizens became dissatisfied with the policy of the district and commenced a campaign to recall from office certain of its directors, Bagley participated in the group's activities. Thereafter the hospital administrator issued to all hospital personnel a memorandum entitled "Political Activities of Public Employees." The memorandum stated: "Notice is hereby given that the Board of Directors of the Washington Township Hospital District [has] instructed the Administrator to place all employees on notice that employee participation in any political activity for or against any candidate or ballot measure pertaining to the ... District is unlawful and will not be acceptable conduct for an employee of this hospital and shall constitute grounds for disciplinary action and/ or dismissal." The memorandum went on to state that the employees were "further advised" of certain sections of the Government Code relating to the political activities of public employees and quoted in full the language of then Government Code section 3205 which provided: "No officer or employee whose position is not exempt from the operation of a civil service personnel or merit system of a local agency shall

---

[2]Prior to the filing of this petition, Lee pursued remedies available to him in the federal courts. No issue of laches respecting the timeliness of the petition is raised here by the County Commission.

[3]There is no question Lee was fully apprised of the law having to do with his political activity. In June of 1972, when he was also employed by DPSS, he became a candidate for the California State Assembly. On that occasion he was advised by letter from the general counsel of the federal commission that he had violated the Hatch Act, but that no proceedings would be taken against him due to his then claimed unfamiliarity with the statute.

Shortly prior to his 1975 candidacy he stated in a memorandum to his DPSS superior that: "I am knowledgeable of Sections 8600 through 8670 of the Los Angeles County (DPSS) Personnel Manual M/L #67 [which set out, inter alia, that violation of the Hatch Act may cause discharge] with regards subject.

"I fully understand the possible consequences of my activities, and am aware of the possible violations of Federal law."

take an active part in any campaign for or against any candidate, except himself, for an office of such local agency, or for or against any ballot measure relating to the recall of any elected official of the local agency."

Bagley sought to enjoin the district from threatening its employees in this fashion. While her suit was pending, she was fired. Our high court, in striking down the statute and the memorandum while reversing the sustaining of a demurrer to Bagley's amended complaint for reinstatement, observed that: "We have recently held that only a 'compelling' public interest can justify the imposition of restraints upon the political activities of public employees and that, 'It must appear that the restrictions ... are not broader than are required to preserve the efficiency and integrity of the public service.' (*Fort* v. *Civil Service Com.* (1964) 61 Cal.2d 331, 337-338 [38 Cal.Rptr. 625, 392 P.2d 385].) Similarly, in the present case, we hold that a governmental agency which would require a waiver of constitutional rights as a condition of public employment must demonstrate: (1) that the political restraints rationally relate to the enhancement of the public service, (2) that the benefits which the public gains by the restraints outweigh the resulting impairment of constitutional rights, and (3) that no alternatives less subversive of constitutional rights are available." (*Bagley* v. *Washington Township Hospital Dist., supra*, 65 Cal.2d 499 at pp. 501-502.)

The court in that case also observed, however, that: "On the other hand, we cannot accept the apparent suggestion of some few cases that government may *never* condition the receipt of benefits or privileges upon the non-assertion of constitutional rights. (See, e.g., *Frost* v. *Railroad Com.* (1926) 271 U.S. 583, 593-594 [70 L.Ed. 1101, 46 S.Ct. 605, 47 A.L.R. 457]; *Terral* v. *Burke Constr. Co.* (1922) 257 U.S. 529, 532-533 [66 L.Ed. 352, 42 S.Ct. 188, 21 A.L.R. 186].) The government employee should no more enjoy the right to wrap himself in the flag of constitutional protection against every condition of employment imposed by the government than the government should enjoy an absolute right to strip him of every constitutional protection. Just as we have rejected the fallacious argument that the power of government to impose such conditions knows no limits, so must we acknowledge that government may, when circumstances inexorably so require, impose conditions upon the enjoyment of publicly conferred benefits despite a resulting qualification of constitutional rights." and that "This court has recognized the right of governmental agencies to preserve their harmonious

operation by restricting such political activities as directly threaten administrative disruption or a loss of integrity." (*Id.* at pp. 505, 511.)

When Lee was discharged federal funds received by DPSS constituted something over 55 percent of that agency's annual budget: The immediate loss to it had it failed to discharge Lee was some $25,650. Unlike in *Bagley,* where the hospital district apparently gratuitously sought to achieve certain results deemed beneficial to it by invoking the spectre of then Government Code section 3205, DPSS in the instant case did no more than accept as necessary a restraint on the political activity of its employees which was imposed by the federal government under the terms of federal legislation already determined not to be offensive to the United States Constitution. (See *CSC* v. *Letter Carriers* (1973) 413 U.S. 548 [37 L.Ed.2d 796, 93 S.Ct. 2880].) The only alternative available to it was to retain Lee as an employee, thereby subsidizing his efforts in running for public office at the expense of those it was intended to benefit. Under such circumstances, where Lee's political activities directly threatened the integrity of the department, the condition imposed upon his employment was justified.

The judgment is affirmed.

Compton, J., and Beach, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied May 20, 1983.